UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE ESTATE OF ANGEL BERGANZO COLON represented by Efrain and Ruben Berganzo; THE ESTATE OF ANTONIO RODRIGUEZ MORALES represented by Noemi Rodriguez Robles, Eliezer Rodriguez Robles, Angel M. Rodriguez Robles, Maria M. Rodriguez Robles and Ruth D. Rodriguez Robles<br><br>Plaintiffs<br><br>v.<br><br>JOSHUA M. AMBUSH<br><br>Defendant | CIVIL NO. 10-1044 (GAG)<br><br>DECLARATORY JUDGMENT OF NULLITY OF FEE AGREEMENT OBTAINED THROUGH MISREPRESENTATION AND DURESS; COLLECTION OF MONIES; DAMAGES<br><br>JURY TRIAL REQUESTED |

**COMPLAINT**

TO THE HONORABLE COURT:

COME NOW Plaintiffs through the undersigned attorney, and very respectfully state and pray as follows:

## I. INTRODUCTION AND NATURE OF THE ACTION

1. Plaintiffs, claimants in the recently settled case styled *Franqui et al. v. Syria et al.*, Case No. 1:06-cv-00374 (RBW) (hereinafter the "Lybia action") before the United States District Court for the District of Columbia, file this cause of action for the recovery of TWO MILLION DOLLARS ($2,000,000.00) in attorney's fees wrongfully paid to defendant Joshua M. Ambush ("Mr. Ambush") by the appearing Estates.

2. In a nutshell, Plaintiffs, who are lay persons from humble Puerto Rican families affected by the Lod Airport Massacre of May 30, 1972 (hereinafter the "Lod Massacre") in Tel Aviv, Israel, were led to believe by Mr. Ambush, through misrepresentations and nondisclosure by him and/or his agents, on the need to sign a certain additional "retainer agreement" for fees in

excess of what the Estate's members had originally agreed to pay the American Center for Civil Justice (hereinafter the "Center"), who had retained and was paying Mr. Ambush his legal fees for representing the Estates in the Lybia action, a fact unbeknownst to plaintiffs.

3. This is an action for a declaratory judgment on the nullity of the retainer agreement fraudulently executed under Mr. Ambush's and/or his agents' misrepresentations, collection of monies and damages suffered as a result of Defendant's actions.

4. This action is bought forth to insure that the Defendant returns the wrongfully obtained attorney's fees and seeks an award for damages in tort.

## II. JURISDICTION AND VENUE

5. The Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and to obtain the costs of suit, including reasonable attorney's fees.

6. Venue is proper in the instant case as all claims arise from events that have occurred and are occurring within the jurisdiction of this Court.

## III. PARTIES TO THE ACTION

7. Plaintiff Efrain Berganzo is a member of the Estate of Angel Berganzo Colon, a claimant in the Lybia action. His address is P.O. Box 2043, Manati, Puerto Rico 00674, and his telephone number (787) 209-0679.

8. Plaintiff Ruben Berganzo is a member of the Estate of Angel Berganzo Colon, a claimant in the Lybia action. His address is 1206 Weston, San Antonio, Texas 78251.

9. Plaintiff Noemi Rodriguez Robles is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. Her address is Urb. Ocean Front, Calle Pacifico #3461, Vega Baja, Puerto Rico 00693.

10. Plaintiff Eliezer Rodriguez Robles is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. His address is HC-33, Buzon 5242, Marismilla, Dorado, Puerto Rico 00646.

11. Plaintiff Angel M. Rodriguez Robles is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. He lives in Barceloneta, Puerto Rico.

12. Plaintiff Ruth D. Rodriguez is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. Her address is 923 Edgewater Cir., Eustis, Florida 32726.

13. Plaintiff Maria M. Rodriguez Robles is a member of the Estate of Antonio Rodriguez Morales, a claimant in the Lybia action. Her address is Apartado 1292, Manati, Puerto Rico.

14. Defendant Joshua M. Ambush is an attorney and member of the Maryland and District of Columbia bars whose office is located at 1726 Reierstown Road, Suite 206, in Baltimore, Maryland.

## IV. FACTS IN SUPPORT OF THE COMPLAINT

15. The Lod Massacre took place in the State of Israel on May 30, 1972. In that attack, Japanese Red Army terrorists opened heavy fire on a group of more than 150 Puerto Rican Americans arriving in the Lod Airport on a pilgrimage trip to Israel. Twenty-four people were killed and around 70 were wounded in the Massacre.

16. Angel Berganzo Colon and Antonio Rodriguez Morales were among those killed in the Massacre.

17. By information and / or belief, on or around 2001 the Center engaged defendant to help pursue litigation on behalf of the victims of the Lod Massacre. Defendant was retained by the Center to, *inter alia,* travel to Puerto Rico to negotiate agreements between the Center and the Puerto Rican victims of the Lod Massacre.

18. Mr. Ambush in turn utilized his alleged "distant cousin", Mr. Leopoldo Garcia ("Mr. Garcia"), to assist the Center in finding potential claimants. The Center paid Mr. Garcia $1,500.00 for locating the Lybia action claimants.

19. Acting as attorney for the Center, defendant and/or the agent Mr. Garcia signed with each Lybia action claimant, to include plaintiffs, a Claimant and Center Agreement (hereinafter the "Center Agreement").

20. According to the Center Agreement, in consideration for the Center's provision of all expenses, costs, legal fees and disbursements necessary to pursue the Lybia litigation, and "[i]n further consideration of the ongoing efforts and services of the Center to assist other victims of oppression and to deter further acts of terrorism, and in order to promote the Center's ability to carry out its goals and purposes", the claimants pledged to pay the Center 20% of the net proceeds to be recovered from the litigation.

21. Specifically, the Center Agreement stressed that "the total in the aggregate, including legal fees, expenditures and pledges is **not** to exceed 20% of the Claimants' recovery from the Litigation." (Emphasis in the original).

22. On June 11, 2002, Plaintiff Efrain Berganzo Cruz, son of decedent Angel Berganzo Colon, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

23. On July 23, 2002, Plaintiff Maria M. Rodriguez Robles, daughter of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

24. On July 23, 2002, Plaintiff Eliezer Rodriguez Robles, son of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

25. On July 23, 2002, Plaintiff Angel M. Rodriguez Robles, son of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

26. On July 23, 2002, Plaintiff Ruth D. Rodriguez Robles, daughter of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

27. On July 23, 2002, Plaintiff Noemi Rodriguez Robles, daughter of decedent Antonio Rodriguez Morales, executed a Center Agreement with the Center through Mr. Garcia, acting as its representative, whereby the Center would undertake to secure counsel to commence litigation on the Rodriguez Estate's behalf.

28. On april 21, 2006, defendant filed the complaint in the Lybia action, styled *Franqui v. Syria*, No. 1:06-cv-00374 (RBW), in the United States District Court for the District of Columbia. On March 28, 2008, defendant filed an amended complaint.

29. On August 14, 2008, Lybia entered into an agreement (the "Claims Settlement Agreement") whereby it would establish a fund in the amoun of $1.8 billion dollars, to be administered by the United States Department of State, to compensate victims of terrorist acts sponsored by Lybia.

30. The appearing plaintiffs were entitled to $10 million dollars for each Estate.

31. Suddenly thereafter defendant, who seldomly if ever communicated with plaintiffs during the years that the Lybia action was pending, traveled to Puerto Rico and/or started communicating with the plaintiffs.

32. Specifically, defendant traveled to Puerto Rico during December of 2008 and, without disclosing that the Center had paid him for his work perfomed in the Lybia action,

demanded the execution of an additional "retainer agreement" *ex post facto*, where the Estates would have to pay him an additional 10% in fees over the 20% agreed upon according to the Center Agreement.

33. Defendant not only did not disclose that the Center had paid him his legal fees for the work perfomed in the Lybia action, but expressed that the Center had not done anything on the Estates' behalf as per the Center Agreement. Defendant also misrepresented to plaintiffs that payment of the compensation to the Estate was contingent on their signature of the additional retainer agreement.

34. Under said misrepresentations, and under duress due to the dire financial condition of plaintiffs, on December 15, 2008, co-plaintiffs Noemi, Angel M., Ruth D., Eliezer, and Maria M. Rodriguez Robles, executed a "Retainer Agreement" retroactive to July 23, 2002, where the Rodriguez Estate agreed to authorize Mr. Ambush to terminate certain powers of attorney granted to the Center's Michael Engelberg to act on its behalf, and to pay defendant an additional 10% of whatever could be recovered pursuant to the Claims Settlement Agreement. This represented a payment of one million dollars per estate.

35. Under said misrepresentations, and under duress due to the dire financial condition of plaintiffs, on December 15, 2008, co-plaintiff Efrain Berganzo Cruz executed a "Retainer Agreement" retroactive to July 23, 2002, where the Berganzo Estate agreed to authorize Mr. Ambush to terminate certain powers of attorney granted to the Center's Michael Engelberg to act on its behalf, and to pay defendant an additional 10% of whatever could be recovered pursuant to the Claims Settlement Agreement. This represented a payment of one million dollars per estate.

36. In fact, when questioned by a member of the Berganzo Estate about the additional 10% fee payment, defendant represented that (i) he was the originator of the idea that culminated in the Lybia action, and that (ii) he was not "protected or included" in the Center Agreement

although he was the "lead attorney". Defendant also advised the Berganzo Estate member not to discuss these matters with anybody else.

37. Because of defendant's omissions and misrepresentations, the appearing plaintiffs believed that signing the additional retainer agreement was a necessary and proper act necessary for receiving the compensation stemming from the Lybia action. Plaintiffs were never told that the signing of the additional retainer agreement was not necessary in order to receive the awarded compensation.

38. The appearing Estates were compensated with $10 million dollars each. Of said amount, the Estates received $7 million dollars after the originally agreed 20% was paid to the Center, and one million additional dollars retained by Mr. Ambush by virtue of the additional retainer agreement.

39. Plaintiffs were alerted about the fact that the execution of the additional retainer agreement was not necessary for receiving compensation through a newspaper advertisement published by the Center through attorney Javier Lopez acting as an agent of the Center, in the El Nuevo Dia newspaper.

40. Through said agent the plaintiffs were informed of a certain ongoing litigation before the United States District Court for the District of Columbia styled *American Center for Civil Justice v. Joshua M. Ambush, Esq.*, Case No. 1:09-cv-00233 (PLF) where the Center is seeking declaratory judgment and damages for, *inter alia*, the execution of the additional retainer agreements herein described.

41. Upon examining the underlying facts supporting said complaint, plaintiffs became cognizant and realized that the appearing Estates were led to sign the additional retainer agreement without having the information necessary to reach a reasonable decision on the necessity and legality of the additional retainer agreement.

## V. FIRST CLAIM FOR RELIEF
## DECLARATORY JUDGMENT ON NULLITY OF ADDITIONAL RETAINER AGREEMENT

41. The averments contained in paragraphs 1 through 40 of this Complaint are incorporated herein by reference.

42. Article 1207 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3372, provides that "[t]he contracting parties can establish the agreements, clauses and conditions that they deem convenient, as long as they are not against the laws, the morals, or the public order." (Translation supplied).

43. Article 1217 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3404, provides that the consent of a party to a contract will be null if it was given through mistake, violence, intimidation or deceit.

44. Article 1221 of the Puerto Rico Civil Code provides that deceit is configured "when with words or insidious machinations of one of the contracting parties, the other is induced to celebrate an agreement that, without them, would not have done." (Translation supplied).

45. Plaintiffs signed the additional retainer agreement believing *inter alia* that its execution was a condition precedent for payment of the compensation stemming from the Lybia action, when it was not.

46. In addition, plaintiffs signed the additional retainer agreement without full disclosure by Mr. Ambush that he was compensated by the Center for his work on behalf of the Estates, and that he was an agent acting for the Center.

47. Plaintiffs would not have signed the additional retainer agreement if the Estates had been afforded all the necessary information as stated above.

48. Plaintiffs signed the additional retainer agreements under deceit and duress.

49. Plaintiffs request a declaratory judgment from the Honorable Court declaring the nullity of the additional retainer agreement, and the return of the $2 million dollars

## II. SECOND CLAIM FOR RELIEF
## COLLECTION OF MONIES AND DAMAGES

50. The averments contained in paragraphs 1 through 49 of this Complaint are incorporated herein by reference.

51. The nullity of the additional retainer agreement obliges defendant to effect restitution of the amounts obtained through the additional retainer agreement, plus interest. Article 1255 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3514.

52. In addition, since defendant acted deceitfully in the performance of his obligations, damages should be awarded. Article 1054 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3018; Article 1060 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3024.

WHEREFORE Plaintiffs very respectfully requests the entry of judgment in its favor as follows:

(a) In connection with the First Claim for Relief, a declaration that the additional retainer agreement is null, as it was executed through deceit, and the corresponding return to the Estates of $1 million dollars per Estate;
(b) In connection with the Second Claim for Relief, the award of damages to include interest on the amounts obtained by defendant through said deceit;
(c) For such other and further relief that this Honorable Court may deem just in addition to the costs and disbursements of this action.

In San Juan, Puerto Rico, this 25th day of January, 2010.

*[signature]*
Javier López-Pérez
USDC-PR #221212
The Hato Rey Center Suite 440
268 Ponce de León Ave.
San Juan, Puerto Rico 00918
Tel. (787) 754-1391 / Fax (787) 754-6019
lopezperezlaw@gmail.com