IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

:_____:

THE ESTATE OF ANGEL BERGANZO COLON      :
represented by Efrain and Ruben Berganzo;
THE ESTATE OF ANTONIO RODRIGUEZ MORALES  :
represented by Noemi Rodriguez Robles,
Eliezer Rodriguez Robles, Angel M.       :
Rodriguez Robles, Maria M. Rodriguez
Robles and Ruth D. Rodriguez Robles,     :

                    Plaintiffs,          :    CIVIL NO:
                                              10-1044 (GAG)(MEL)
            vs.                          :

JOSHUA M. AMBUSH                         :
                    Defendant.
:_____:

DAY 6 OF THE JURY TRIAL
HELD BEFORE
THE HONORABLE GUSTAVO A. GELPI
Monday, October 3, 2011, beginning at 1:44 p.m.
:_____:

A P P E A R A N C E S:

            LAW OFFICES OF DAVID EFRON
            BY DAVID EFRON, ESQUIRE and
            BY JOANNE V. GONZALES-VARON, ESQUIRE
            P.O. Box 29314
            San Juan, Puerto Rico 00929
            For the Plaintiffs

            McCONNELL VALDES, LLC
            BY RAUL M. ARIAS-MARXUACH, ESQUIRE and
            BY HENRY O. FREESE-SOUFFRONT, ESQUIRE
            270 Munoz Rivera Avenue
            P.O. Box 364225
            San Juan, Puerto Rico 00936
            For the Defendant

1          THE COURT:  Please be seated.  Let's call

2     the case.

3          THE DEPUTY CLERK:  The estate of Angel

4     Berganzo-Colon, et al. verus Joshua Ambush.  Civil

5     case, 10-1044.  Proceedings:  Charging conference.

6          On behalf of plaintiffs, Attorney David

7     Efron on behalf of defendants Attorneys Henry Freese

8     and Raul Arias.

9          THE COURT:  Good afternoon, Counsel.  I

10    apologize for the slight delay, but I have another

11    case that's scheduled for trial tomorrow and I was

12    doing some last minute matters.  Okay, before we

13    discuss the working drafts of the instructions, that

14    this has not been filed electronically because it's a

15    working draft.  Once I decide what my final draft

16    will be with your input, that one will go into the

17    system.

18          But I wish to ask, first of all, Counsel

19    have there been any possible settlement talks or at

20    this time it hasn't gone anywhere?

21          MR. ARIAS-MARXUACH:  No talks, Your Honor.

22          MR. EFRON:  No, Your Honor.

23          THE COURT:  So then I will proceed with the

24    working drafts.  What I will do then is I think the

25    issues will raise once we start discussing the

1  substantive instructions and there may be additional

2  instructions that you might request each side that I

3  add.  So what I will do is first I will go through 1

4  by one and then we'll proceed.  Then I have some

5  proposed verdict form.

6          So you all have your packages, correct?

7          MR. EFRON:  Yes, Your Honor.

8          THE COURT:  And I assume all of you obtained

9  over the weekend or last week my ruling on the burden

10 of proof that's going to be instructed to the jury.

11         MR. EFRON:  Yes, Your Honor.

12         MR. ARIAS-MARXUACH:  Yes, Your Honor.

13         THE COURT:  What I intend to do is, if

14 there's dolo under a clear and convincing standard,

15 there would have been dolo under a preponderance.

16 That's not going to be an issue.  Should the jury

17 reach a ruling that there's no dolo under clear and

18 convincing, that's the judgment the Court will enter.

19 Eventually what the Court will do then depending on

20 how the jury comes down, I will ask them whether --

21 and that's something I would have to discuss on how

22 to do that.  But I will ask them if under the other

23 standard they would find dolo or not.  So now let's

24 go to the instructions first.

25         I'm going to go one by one.  Preliminary

1    instruction as to dolo, that's the only claim.  Any

2    objection as to that instruction?

3          MR. ARIAS-MARXUACH:  Your Honor, the only

4    thing is that this does not state in any way our

5    defense that the contract is valid clear, et cetera.

6    It's simply -- but we are in agreement that --

7          THE COURT:  What I can do is, this case

8    involves a dolo claim by the plaintiffs against the

9    defendant; the defendant denies he engaged in dolo.

10          MR. ARIAS-MARXUACH:  Mm-hmm.

11          THE COURT:  And before we go to the other

12    instruction, what I will do is, the first thing I do

13    is I read the jury instructions to the jury.  After

14    that, that's when your closing arguments come and

15    that way you have the instructions.  So that way --

16    because what happens is, that's why I do it this way

17    because otherwise, Counsel, when you have the

18    instructions you may always in the argument say, "as

19    the judge told you in his instruction" and you

20    already have that instruction.  If I haven't given

21    that instruction, you can't instruct the jury on the

22    law.  So they've been instructed on the law and by

23    the time you do your closing.

24          Jury instruction No. 1, that's a standard

25    instruction; any objection as to that?

1          MR. ARIAS-MARXUACH:  No.

2          MR. EFRON:  No, Your Honor.

3          THE COURT:  Role of the jury, that's another

4     standard one; any objection?

5          MR. ARIAS-MARXUACH:  No, Your Honor.

6          MR. EFRON:  No, Your Honor.

7          THE COURT:  Instructions apply to each

8     party; any objection?

9          MR. ARIAS-MARXUACH:  No, Your Honor.

10          MR. EFRON:  No, Your Honor.

11          THE COURT:  Multiple plaintiffs; any

12     objection?

13          MR. ARIAS-MARXUACH:  Yes.  We have a comment

14     on jury instruction No. 4.  This may be an knit, but

15     in the first line it does not follow from -- "that"

16     is misspelled.  The word "that" is misspelled.  There

17     is a more substantive objection which is, that line

18     goes on -- that first sentence says, "Although there

19     are multiple plaintiffs in this action, it does not

20     follow from that fact alone that if one plaintiff is

21     entitled to recover both are entitled to recover."

22     Now, it should be "all" instead of "both."

23          THE COURT:  Okay.

24          MR. EFRON:  No, Your Honor.  I think it

25     needs to be corrected for another reason.  First of

1    all, the dolo that's being argued here is as to one

2    event; the event of December 15.  If there's dolo as

3    to one, there is dolo as to the other.

4         THE COURT:  Not necessarily because the jury

5    in theory, and you'll see the verdict form, could

6    find that there was dolo, for example, as to the

7    estate of an Angel Berganzo but no dolo as to the

8    estate --

9         MR. EFRON:  Okay.  Assuming Your Honor is

10   correct, we respectfully disagree.  But if for some

11   reason it's to be the dolo to the two signatories, to

12   the two representatives that have the powers of

13   attorney, then it should be -- then the second line

14   should read that if one plaintiff is entitled to

15   recover, it should say both families are entitled to

16   recover.  And then correcting it and indicating that

17   you don't have to prove the dolo by each represented

18   party or only by --

19        THE COURT:  That the fact alone that if one

20   estate -- the other thing you have to keep in mind,

21   and this is something important for your closings, if

22   the -- I'm going to ask the jury find dolo.  If they

23   find dolo, the remedy is an equitable remedy, I grant

24   that equitable remedy, so all they have to do is find

25   dolo, yes or no.  If they find dolo, then the

1    individual representative, that's where they can --
2    you can ask them --
3           MR. EFRON:  It has nothing to do with that.
4    But certainly it's either dolo for everybody for that
5    event or, at the worst case scenario for Plaintiff,
6    it's dolo individually for each family.
7           THE COURT:  For each estate.
8           MR. EFRON:  For each estate.  But when my
9    brother counsel tells us that he wants it to say that
10   if one plaintiff is entitled to recover all are
11   entitled to recover, the word "all" gives us an
12   insinuation that they must find dolo as to each and
13   every one of the represented parties.  And that's not
14   the case.
15          MR. ARIAS-MARXUACH:  May I be heard?
16          THE COURT:  Yes.
17          MR. ARIAS-MARXUACH:  Your Honor, that is
18   precisely our contention.  The retainer agreement
19   signed on December 15, 2008 for the estates of the
20   Rodriguez-Robles and the Berganzo families were
21   documents that were signed and initialed by each of
22   the members of those estates individually.
23          MR. EFRON:  Not true.
24          MR. ARIAS-MARXUACH:  I did not speak while
25   you were addressing the Court, so I would expect the

1    same courtesy from you.

2           THE COURT:  Okay, let's continue.

3           MR. ARIAS-MARXUACH:  Now, the December 15,

4    2008 retainer agreements for each of these families

5    they were individually consented by each of the

6    members of the estates, except for Ruben Berganzo who

7    relied on his brother Efrain.

8           MR. EFRON:  And who --

9           MR. ARIAS-MARXUACH:  But as to the

10   Rodriguez-Robles families, they consented

11   individually and they signed individually and,

12   therefore, they each have to proof a vice or a *vicio*

13   of their consent.

14          And this is not only -- and let me say this,

15   Your Honor.  It is not only -- this argument is not

16   only premised on the fact that they each signed the

17   individually, it is also premised on the fact that

18   under Puerto Rico Law estates are not individual

19   persons.  Estates are not corporations.  They are not

20   special partnerships, they are not limited liability

21   companies.  They are a collection of individuals that

22   have certain rights to a mass of rights and assets

23   and obligations that a deceased person left.

24          And for the case law that we have cited on

25   defendant's request for Charge No. 14, it is our

1    contention that the estates themselves are not

2    plaintiffs.  It is the individual members that

3    comprise those estates that are the plaintiffs in

4    this case.

5              MR. EFRON:  May I be heard?

6              THE COURT:  Mr. Efron.

7              MR. EFRON:  Your Honor, there's at least one

8    member of each estate that was not in Puerto Rico

9    that didn't live in Puerto Rico and that was not even

10   present at the December 15 meeting.  How did Attorney

11   Ambush resolve that?  By using powers of attorney.

12   Everybody signed powers of attorney.  The Berganzos

13   to Efrain and the Rodriguezes to Noemi.

14             You can't -- you can't -- you can't go

15   both -- you can't have it both ways.  You can't go

16   and say, oh, in order for them to authorize me to

17   take an additional 10 percent, they were duly

18   authorized because the people who were not there had

19   signed powers of attorney but now when they're trying

20   to show that the consent was vitiated, oh, for that

21   you have to bring -- you have to bring everybody

22   individually.  It doesn't work like that.

23             The power of attorney -- as long as we show

24   that the person that had the power of attorney that

25   was authorized, that was authorized, by the rest of

1　the family to obligate the rest of the family, as

2　long as that one member, that one representative, was

3　deceived, that applies to the whole clan.

4　　　　Now, why did -- so why did the other ones

5　signed the agreement?  Because they were there.  But

6　their signatures were totally unnecessary.  They had

7　already done the powers of attorney.  They had

8　already gone through the whole thing and that was not

9　necessary.  These are two families, two -- if we're

10　not going to go through it as estates because of its

11　alleged lack of judicial capacity, then we certainly

12　have to look at it as the two members that had the

13　powers of attorney issued by every other member of

14　their respective family.  These are two families, not

15　eight.

16　　　　THE COURT:  Okay.  I'm going to try to

17　rephrase this, let me see how this sounds.  And the

18　instruction, this is what I proposes:  "Although

19　there are multiple plaintiffs in this action, it does

20　not follow from that fact alone that if you find dolo

21　as to one estate, you must automatically find dolo as

22　to the other estates," because we're talking about

23　estates.

24　　　　MR. ARIAS-MARXUACH:  Your Honor, I still

25　think --

 1          MR. EFRON:  Go ahead, I'm sorry.  You go

 2     first.

 3          MR. ARIAS-MARXUACH:  It still doesn't get us

 4     where we need to be because in this case the retainer

 5     agreement was signed -- for the Rodriguez families it

 6     was signed by all of the members of the Rodriguez

 7     family individually.  The only person that signed the

 8     retainer agreement -- that is bound by the retainer

 9     agreement because he relied on his sibling is Ruben

10     Berganzo, because Ruben did testify that he relied

11     upon Efrain.  But the Rodriguez-Robles family, all of

12     them consented individually to the retainer

13     agreement.

14          THE COURT:  But that would mean that, for

15     example, if there's five members to that Rodriguez

16     family and there was dolo as to one of them, then

17     there's dolo as to that whole estate.

18          MR. ARIAS-MARXUACH:  No, because they each

19     consented individually and dolo is based on a mental

20     state.

21          THE COURT:  So what you would suggest is

22     that, for example, in that estate perhaps if the jury

23     were to find dolo as to four members -- not as to

24     four of the members but then he were to find as to

25     one of them, the jury could tell that there was only

1    dolo as to one of them.

2              MR. ARIAS-MARXUACH:  Exactly.

3              THE COURT:  And then I would issue the

4    equitable remedy which could be --

5              MR. ARIAS-MARXUACH:  The pro rata share of

6    the disputed fees.

7              MR. EFRON:  That's a tough one.  There was

8    at least one member of each family that was not

9    represented.  They're already getting --

10             THE COURT:  Okay, but one of them -- in the

11   Berganzo it's easy because there's a power of

12   attorney for one, so he's deciding for everybody.

13             MR. EFRON:  But it's the same thing with

14   Noemi.  Noemi had a power of attorney and she took

15   all the decision for Ruth who was not here.  Ruth

16   lives in Orlando, she wasn't -- she did not -- she

17   signed after the fact, she was not at the meeting.

18   She was not -- you know, there's at least one member

19   of each family who did sign --

20             THE COURT:  Okay, but all of them did sign

21   in the second estate, even though somebody signed in

22   Orlando at some point.

23             MR. ARIAS-MARXUACH:  *Si*, that's true.

24             THE COURT:  But the Berganzos, only one

25   person signs on behalf of everybody.

1          MR. EFRON:  What obligates these two

2     families are the powers of attorney that they gave

3     one of their sibling to contract with Mr. Ambush.

4     That's the only thing that obligates them.  It's

5     not -- these are -- these are --

6          THE COURT:  Okay, but even if Ruth has a

7     power of attorney for one sister, there're still

8     three others.

9          MR. ARIAS-MARXUACH:  Well, Your Honor, and

10    the thing is I have to take issue with Mr. Efron's

11    representation that the powers of attorney were

12    issued for the purpose of contracting with

13    Mr. Ambush.  The powers of attorney that the members

14    of the Rodriguez-Robles family granted to Noemi

15    Rodriguez-Robles and the members of the Berganzo

16    family -- or the other member of the Berganzo family

17    issued to Efrain Berganzo were issued after the

18    December 15, 2008 meeting, after the members of the

19    Rodriguez-Robles family had each consented

20    individually to the retainer agreement.  Those powers

21    of attorney were issued for the purpose of the

22    settlement of the administrative claim, the espousal

23    process.  They come after the fact and they don't

24    have retroactive effect.  They each consented

25    individually, that's why they all signed

 1    individually.  Ruth signed in Orlando but the rest of

 2    them were in the room --

 3            THE COURT:  The Berganzos, only one of them

 4    signed.

 5            MR. ARIAS-MARXUACH:  Only one of them signed

 6    which was Efrain, the first witness in the case.

 7            THE COURT:  But as to the Rodriguezes it

 8    would be the five of them who signed.

 9            MR. ARIAS-MARXUACH:  Who signed

10    individually.  And if they contend that their consent

11    was vitiated, each of them has to prove it and there

12    has to be a verdict brought for each of the members

13    of the Rodriguez-Robles estate, which is

14    compounded -- the problem is compounded by the fact

15    that two of them chose not to come here an espousal

16    claim.

17            THE COURT:  That's an issue.  There's going

18    to be an instruction as to that.

19            MR. EFRON:  You see, it gets very

20    complicated from what it really was.  This was a

21    meeting on December 15 which we allege -- in which we

22    allege Mr. Ambush deceived and committed dolo and

23    this was one event, it was one act.  If he committed

24    dolo against one, he did commit dolo against all of

25    them.  That's why this instruction should be

1    corrected.  To now take it to say that there need to

2    be eight different causes of action I think that's

3    going hold.

4           THE COURT:  Let me say this.  And I disagree

5    with you, Mr. Efron, because -- and there was

6    evidence here.  There's some members who have more

7    education than the others.  And the Rodriguez family,

8    not all have the same education.  That was amply

9    discussed.

10          And it may very well -- and I think this

11   instruction, even if you disagree with me, might even

12   benefit you because if Mr. Ambush is able to convince

13   the jury that two or three of those estate members

14   are too smart and, you know, even for whatever

15   happened but they should have known or they were

16   aware, but then there's maybe two or three who -- you

17   know, and you brought that up.  They don't even have

18   almost any education or they don't read English or

19   anything.  You might have -- even assuming that the

20   jury were to find dolo as to some, you still --

21   you're going to get more shots -- you're going to get

22   more turns at bat that way as if we look at one

23   estate.  Because the jury might say no, overall --

24   again -- and in that sense I have to agree with

25   Mr. Arias.  But I think the instruction, what's good

1 for the goose is good for the gander because it does

2 benefit individually your estate member.

3 So the courts -- the instruction, it's

4 modified to read, "All are entitled to recover."

5 That's the instruction I will give and you're free to

6 argue within that instruction to the jury.

7 Your objection is noted. Tomorrow after I

8 read the instruction and before the opening arguments

9 I'll bring you here for side bar and if you have to

10 renew any objection, I'll allow you to do it.

11 Jury Instruction No. 5, official

12 translation, that's pretty standard; any objection?

13 MR. EFRON: No, Your Honor.

14 THE COURT: Jury Instruction No. 6?

15 MR. EFRON: No objection.

16 THE COURT: What I'm going to ask is that

17 Carlos, my courtroom deputy, for tomorrow he will

18 print out from the pretrial report the stipulations

19 and those will be -- I'll read them to the jury.

20 Also, after the whole package of instructions and

21 before you do your closing argument, so those

22 stipulations will go into the record and they will be

23 able to take them into the jury room also, the

24 stipulation form.

25 Jury Instruction No. 7, evaluation of the

1    evidence; any objection?  That's pretty standard

2    also.

3              MR. ARIAS-MARXUACH:  No objection.

4              MR. EFRON:  No, sir.

5              THE COURT:  Eight.  What is evidence?  I

6    don't think there's any objection.

7              MR. EFRON:  That's fine, Your Honor.

8              THE COURT:  No. 9.  What is not evidence?

9    That's also pretty standard.  Any objection?

10             MR. EFRON:  No, Your Honor.

11             THE COURT:  No. 10, inference is defined;

12   any objection?

13             MR. EFRON:  No objection.

14             MR. ARIAS-MARXUACH:  Okay.  There, Your

15   Honor, it is my recollection that there's a typo

16   here, "...in other words, you are not limited tou,"

17   it should be "to."

18             MR. EFRON:  To what?

19             MR. ARIAS-MARXUACH:  To what.  Exactly.

20   There's a space.

21             THE COURT:  Okay.

22             MR. ARIAS-MARXUACH:  There's also -- my

23   recollection on the First Circuit case law is that

24   inference is reasonable if it can be drawn from the

25   evidence with no regard to speculation.  I believe

1  that limitation should be here.

2        MR. EFRON:  It's a standard instruction,

3  Your Honor.  We've seen it many times.  I don't think

4  it should be in any way changed.

5        THE COURT:  Because it just talks about

6  "...reasonable inferences that seem justify in light

7  of your experience."

8        MR. ARIAS-MARXUACH:  But the First Circuit's

9  definition of a reasonable inference is, if it can be

10  drawn from the evidence without regard to

11  speculation.  The controlling case is Hidalgo versus

12  Overseas Insurance Agencies.

13        MR. EFRON:  That's not relevant.

14        THE COURT:  But I believe that was a summary

15  judgment case.

16        MR. ARIAS-MARXUACH:  That's a summary

17  judgment case.

18        THE COURT:  Let me just look I understand

19  what you're saying.  I usually.  Let me see.

20        MR. EFRON:  It's a standard instruction.

21        THE COURT:  I know but I have seen some

22  language about speculation.  Let me just see if

23  there's any standard language.

24        I believe, Mr. Arias -- I don't have it here

25  with me that you're requesting inferences cannot be

1   based on mere conjecture or speculation, something to

2   that effect.  But it's usually --

3           MR. ARIAS-MARXUACH:  Yes.

4           MR. EFRON:  That's not the standard

5   instruction and that case is not applicable here.

6           THE COURT:  Okay.  Let me just recess for

7   two minutes, go get some other instructions that I've

8   used in other cases.

9           MR. EFRON:  Can we continue with the rest of

10  the instructions since we're here, or do you want

11  to --

12          THE COURT:  No, let me just go get int.

13  That way if I need to break, I'll have my other

14  instructions.

15          THE COURT OFFICER:  All rise.

16          (Jury Trial recessed at 2:05 p.m. and

17  resumed at 2:09 p.m.)

18          THE COURT:  What I'm going to add in the

19  instruction -- I've looked at the other instructions

20  that I've used similar language.  So the way I'm

21  going to modify this instruction is, the last

22  sentence is going to read, "Inferences are deduction

23  or conclusions that reason and common sense, and not

24  speculation, leave you to draw from facts established

25  by the evidence in the case."

1          MR. EFRON:  Just for the record, Plaintiffs

2     object to that.

3          THE COURT:  Okay.  And then tomorrow again

4     just remember to reobject once I have the objection

5     noted in the record.  And you have to object also

6     after the jury deliberates, if you have to object.

7          Okay.  No. 11, any objection?  Ruling on

8     objections, that's pretty standard.

9          MR. EFRON:  No objection.

10          MR. ARIAS-MARXUACH:  No, Your Honor.

11          THE COURT:  Instruction No. 12, I don't

12     think I admitted any evidence for a limited purpose

13     so that one goes out.  Everybody in agreement?

14          MR. EFRON:  You'll take it out?

15          THE COURT:  Yes, because all the evidence

16     was admitted for all purposes.  It wasn't like I

17     heard you only to consider this evidence for this

18     purpose, so that's a non-issue.

19          MR. ARIAS-MARXUACH:  Okay.

20          MR. EFRON:  Okay.

21          THE COURT:  Direct or circumstantial

22     evidence, Instruction No. 13; any objection?

23          MR. EFRON:  No, Your Honor.

24          THE COURT:  Instruction No. 14, and that I

25     have to consider along with the inference

1    instruction.  I don't know if I -- did I include that

2    one here?

3              MR. EFRON:  No.

4              THE COURT:  So that's the general

5    instruction, but then I would have to give the

6    instruction as to the inference when a party who is

7    announced to testify is not present.

8              So, Mr. Arias, would you have that

9    instruction to add to this instruction?

10             MR. ARIAS-MARXUACH:  Yes.  The adverse

11   inference?

12             THE COURT:  Yes.

13             MR. ARIAS-MARXUACH:  I believe you have it

14   here.

15             THE COURT:  It would be from the ones you

16   proposed.  Am I correct?  Oh, I have it here?  Yeah,

17   okay, I have Instruction No. 20.

18             MR. EFRON:  I'd like to see it.

19             THE COURT:  Instruction No. 20.  I do have

20   it here.  If a party fails to call a person as a

21   witness who has knowledge about the facts at issue --

22             Instruction 20, let me go back, if a party

23   fails to call a person as a witness who has knowledge

24   about the facts in an issue and who is reasonably

25   available to the party and who is not equally

1  available to the other party, then you may infer that

2  the testimony of that person is unfavorable to the

3  party who would have called the witness and did not.

4        MR. ARIAS-MARXUACH:  Your Honor, we do have

5  one proposal.

6        THE COURT:  Yes.

7        MR. ARIAS-MARXUACH:  It would be that that

8  instruction that you have read as No. 20 be read

9  after the current instruction --

10       THE COURT:  It would be like a 14 and a

11  half.

12       MR. ARIAS-MARXUACH:  14A, whatever.

13       THE COURT:  That's what I intend to -- to

14  give both instructions because, as I mentioned, I'm

15  going to give the other instruction.  So what I will

16  do is, I will read Jury Instruction 14 and then move

17  No. 20 after 14.  And what I will be doing this

18  afternoon, once we finish the charge conference, by

19  this evening at some point you're going to get the

20  final jury instruction package.  So any last minute

21  minor objections you can -- or you might even want to

22  do it for the record electronically tonight.

23       Okay.  But Jury Instruction No. 14, no

24  objection, correct?  Mr. Efron, no objection?

25       MR. EFRON:  Well, you know...

1        MR. ARIAS-MARXUACH:  Your Honor, the only

2   issue that we have with this instruction is that it

3   may lead the jury astray in the sense that, you know,

4   as to the parties members of -- you know, the

5   plaintiffs had a burden of production in the sense

6   that they had to come here and they failed to show

7   up.

8        MR. EFRON:  If it was explained that their

9   testimony would be cumulative and if it was explained

10  that they were unavailable because they were out of

11  the country, certainly the burden is not as strong.

12  That burden is not as strong as Mr. Arias would want.

13       THE COURT:  But the dolo means those parties

14  were called as witnesses in the pretrial order.

15       MR. EFRON:  They were mentioned as witnesses

16  but, you know, we -- first of all, we called them.

17  At no point did defendants request that they be

18  produced and, in addition, we explained that it was

19  cumulative evidence.  Their sibling said that they

20  were out of the country.  Now, as it is --

21       THE COURT:  But that's something -- that's

22  something -- that's a presumption, but that's

23  something that you could argue to the jury based on

24  the evidence.

25       MR. EFRON:  Yes, but -- just one second.

1    As it is they're already going to be
2    punished enough by not being able to -- assuming that
3    the jury finds for plaintiff, they're already going
4    to be punished enough in the sense that they won't be
5    able to get any compensatory damages.  So they're
6    already punished enough with that.
7        You know, so -- but I agree with Your Honor
8    that plaintiffs could -- I could argue what I just
9    explained to you.
10       MR. ARIAS-MARXUACH:  *Bueno*, Your Honor I
11   respectfully disagree.  The members of the
12   Rodriguez-Robles families that did not come to the
13   trial were advised, because I'm sure that Mr. Efron
14   exercised his duty to keep his client informed, they
15   were notified of this trial several months in
16   advance.  So there's no excuse and there's no
17   recorded evidence from which he can try excuse their
18   absence to the jury.  There's no medical note.  For
19   all we know they could be on a cruise.  There's no
20   reason to excuse them.  They failed to appear for a
21   trial that they had months of advance notice.
22       THE COURT:  But in a civil case, let's
23   assume your client -- and I say this respectfully,
24   let's assume he's in a religious one-year pilgrimage
25   somewhere and he couldn't be here to testify, and you

1  had other evidence, that doesn't mean that I

2  necessarily would have to give the adverse inference.

3  Because I've had many case where plaintiffs and

4  defendants -- what I always say in the civil case, as

5  long as the attorneys are present here what you may

6  have is, they did not testify, you may say well,

7  they're claiming dolo but they weren't here and

8  there's a presumption because they could have

9  testified.  But not necessarily do they have to be

10  present --

11         MR. ARIAS-MARXUACH:  *Pero es que* they were

12  called as witnesses, we're entitled to presumption.

13  And we're also entitled to -- and they're not

14  entitled to try to explain it away because they

15  haven't -- there was no evidence before this jury as

16  to why they're not here.

17         THE COURT:  They were announced as witnesses

18  in the pretrial report.  That is clear.

19         MR. EFRON:  And that's it.  And that's it.

20  And their sibling said that they were out of the

21  country, they were out of Puerto Rico.

22         THE COURT:  But then I have to give them the

23  presumption instruction.

24         MR. EFRON:  That's fine, that's fine.

25         MR. ARIAS-MARXUACH:  Yeah.

1          THE COURT:  But you cannot --

2          MR. ARIAS-MARXUACH:  But that's not

3   evidence.

4          MR. EFRON:  It's argument.

5          THE COURT:  The only evidence he would have

6   is, they were outside of Puerto Rico.  If you think

7   that destroys the presumption --

8          MR. ARIAS-MARXUACH:  And the problem I have

9   also Your Honor is that these people are not mere

10  witnesses, they are plaintiffs who had a burden of

11  proof as to their individuated dolo claim and they

12  did not show up.  So my concern is the current

13  version of --

14         THE COURT:  Okay, but that led to a Rule 50.

15         MR. ARIAS-MARXUACH:  That led to a Rule 50,

16  but my question is whether they're --

17         THE COURT:  Let me ask this because -- and,

18  again, we don't have a jury here but wouldn't that

19  Rule 50 extend to their pro rata claims as to dolo?

20         MR. ARIAS-MARXUACH:  That's what I

21  understand, but it's not clear from your order, Your

22  Honor, I have to respectfully say.

23         THE COURT:  And let me say this, I did

24  not -- when I ruled upon it, I just ruled their

25  individual dolo damages claim.  But the way I'm

1   giving the instruction and the way -- I think if we

2   look and from what you've argued the fact that they

3   may have waived their claim, then what would be left

4   out of the million would be, you know, you take those

5   two out. But those estate members could still

6   recover 600,000 amongst each other rather than

7   $1 million.

8         MR. ARIAS-MARXUACH: *Por eso.* We have to

9   take out all of their claims be it for "restitution"

10   of their pro rata share of the attorneys fees or some

11   sort of incidental consequential damage.

12         MR. EFRON: Your Honor, that would be

13   reversible damage.

14         MR. ARIAS-MARXUACH: So --

15         MR. EFRON: I thought you were done.

16         MR. ARIAS-MARXUACH: So --

17         MR. EFRON: You cannot say that there was

18   dolo as to some members of the same estate of the

19   same family and not as to the others. There either

20   is or there isn't. It's not -- these are not

21   individual claims that they're bringing. These are

22   not individual claims that they're bringing, these

23   are claims that they're bringing on behalf of

24   estates. The money was taken from each estate, not

25   just from each plaintiff.

1          MR. ARIAS-MARXUACH:  Your Honor, dolo is a

2     theory of a vice of consent.

3          THE COURT:  It's a state of mind issue.

4          MR. ARIAS-MARXUACH:  It's a state of mind

5     issue.  It's an individual determination --

6          THE COURT:  The thing I see, I don't have --

7     they didn't -- these two plaintiff witnesses were not

8     here, they didn't testify.  I don't know how -- I

9     couldn't figure what their state of mind is.  One of

10    them, as a matter of fact signed later.  But, you

11    know, that's the problem.  I don't know what -- maybe

12    the sister who is living in Orlando could have a

13    Ph.D. in bio-chemistry.  I don't know.  Because --

14         MR. EFRON:  She doesn't, Judge.

15         THE COURT:  But, again, the jury doesn't

16    know.  You can't tell the jury she doesn't have a

17    Ph.D. in bio-chemistry because that's not evidence.

18    And that's the problem we have as to those two

19    individuals.  And, again, this is a mens rea not from

20    mens rea of the culpable or alleged culpable

21    individual, but it's kind of like you need to have,

22    you know, a state of mind.

23         MR. ARIAS-MARXUACH:  As I said, Your Honor,

24    with respect to Jury Instruction 14, either we

25    address the fact that these two members of the

1    Rodriguez-Robles families are no longer plaintiffs or

2    we have to say that each party claiming dolo has the

3    burden of proof to establish that.

4           MR. EFRON:  There's no obligation --

5           THE COURT:  Sorry to interrupt.  Let me ask

6    this, Mr. Efron, because these two Rodriguez family

7    members cannot get any damages.

8           MR. EFRON:  There's no obligation that a

9    plaintiff be present during trial.  There's no

10   obligation.

11          THE COURT:  I understand, but let me say

12   this -- and, again, I think this works both ways.  If

13   the jury were to -- the defendant's position is that

14   dolo works individually plaintiff to plaintiff.  We

15   have an estate but we have individual estate members.

16   And each member -- you know, you could have in the

17   Rodriguez estate, for example, one with more

18   education who understands English and the jury says,

19   well, obviously this one, there's no way he wasn't

20   going to understand it.  I don't like what Mr. Ambush

21   may have done, but this guy knew exactly what he was

22   getting into and, you know, there's no dolo.

23          But the jury could say the sister, oh, they

24   didn't have that much education and they could keep

25   those in.  And I think --

1           MR. EFRON:  After the December 15 deception,

2      let's assume if one of the members of the Rodriguez

3      family would have said, you know what, I'm not

4      signing, what would have happened?  He wouldn't have

5      represented any of them.  Because, you know, it's all

6      or nothing in an estate.

7           So he can't have it both ways.  He can't say

8      I need to have everybody either through the power of

9      attorney or individually authorize me and then say

10     every plaintiff has to be here individually, because

11     he took the funds from the estate in its entirety.

12     He took the funds, he took the total funds, from the

13     money -- from the $10 million that the estate was to

14     get.  He did not take the money from each individual

15     of the members of the estate.

16          THE COURT:  I understand that, but then what

17     occurs is that that money, if you have five, there's

18     200,000 as to each -- excuse me, he takes -- if you

19     pro rata that individual, that money, it would be the

20     equivalent of the 7 million divided by five.  Each of

21     them would in a sense be giving him in attorney's

22     fees 200,000.

23          But what if any of these individual

24     plaintiffs had the -- you know, again, maybe they

25     were all -- again, with all due respect to them, what

1    if they were all stupid, they were all victims of

2    dolo?  But it all depends -- and I think there's been

3    a lot of direct and cross as -- and as a matter of

4    fact you, yourself, would ask what was your

5    education, what was this and that.  You know, and at

6    least from your perspective I assume your position is

7    that these are not highly sophisticated, educated

8    individuals and all of a sudden they are brought with

9    this issue:  You can get $10 million for the estate,

10   you know, and they were just signing because they

11   wanted the money.

12        You know, the defense, I'm sure, is going to

13   say, you know, some them had -- at least Mr. Berganzo

14   was in the Army, he went to some Army graduate school

15   or some courses.  That's -- and that could go

16   plaintiff to plaintiff.  You know, if you have one

17   estate -- you know, again, let me hear from you --

18   let me hear from Mr. Arias first.

19        MR. ARIAS-MARXUACH:  Again, Your Honor, dolo

20   is a mental state which goes to the validity of a

21   person's consent and, therefore, they each

22   individually, the members of the Rodriguez-Robles

23   family, had the burden of proof.  If they didn't show

24   up to testify about their mental state and the

25   circumstances under which they consented to the

1    retainer agreement with Mr. Ambush, they failed to

2    meet their burden of production (sic).  And, again, I

3    understand that Rule 50 as to those two members of

4    the Rodriguez family that were not present and did

5    not come to this trial, they failed to meet their

6    burden of proof and that should include everything,

7    whether it's a claim for restitution or some sort of

8    consequential damage.

9          THE COURT:  Let me ask Mr. Efron because

10    what could happen -- let's assume -- with the

11    Rodriguez family let's assume that the jury says,

12    well, this estate member who testified, well, he

13    obviously got the education or he's worked at this

14    place or that place.  This is a person who definitely

15    would have asked more questions; I don't think he

16    engaged in dolo.  If it would be just as to one

17    estate, if one of them -- they believe one of them

18    did not suffer from dolo, then the whole estate is

19    gone.  If it's on an individual basis, even if they

20    find one or two members were the victims of dolo, not

21    necessarily, you know --

22          MR. EFRON:  Your Honor, you already have

23    other instructions on dolo.  I think you're over

24    instructing on dolo.  I think this is --

25          THE COURT:  But this is not a dolo

1    instruction.

2           MR. EFRON:  Exactly.  It's not a dolo

3    instruction.  It's a standard boilerplate instruction

4    that the Court uses, which we agree with, and to now

5    try to intersect dolo into as many instructions as

6    possible unnecessarily is just -- it's just going to

7    be prejudicial to the plaintiff and that's not how it

8    goes.  You already sufficiently -- the Court already

9    sufficiently explained dolo in other instructions.

10          And there's no reason to be trying to change

11   every standard instruction that we're reading just to

12   interject dolo and to keep repeating and rehashing

13   the same.  They got it.  By then they already have

14   heard the Court's instruction on dolo.

15          THE COURT:  Okay.  What I'm going to do is

16   I'm going to read Instruction 14 as it stands and

17   then read Instruction No. 20, which will then be

18   Instruction 15.  And, again, No. 20 I think it's --

19   and I think Defendants can raise that instruction and

20   argue anything because, again, these were parties to

21   this action, they were reasonably -- could have

22   reasonably been here, they didn't come here.  They

23   were announced as witnesses in the pretrial report

24   and they did not show up.  And, again, you can make

25   whatever arguments you can make out of that.  And I

1  think Mr. Efron, the only argument he's going to have

2  is one was in Orlando, apparently he didn't come

3  here.  I don't think he can argue as to that.

4          Okay.  So Jury Instruction No. 15, notice of

5  knowledge, duty of inquiry?

6          MR. EFRON:  So then all the other numbers

7  change as well?

8          THE COURT:  Yeah.  Everything's going to

9  change tomorrow when you get the final package so --

10  but I'm working with the numbers in this package.

11         So Instruction 15; any objection?

12         MR. EFRON:  Which is No. 20?

13         THE COURT:  No, no, no.

14         MR. ARIAS-MARXUACH:  He's just using the

15  same sequence.

16         THE COURT:  No. 20 is going to be moved

17  after 14, but I'm using the same sequence still.

18         MR. EFRON:  Okay.  So you want us to go back

19  to 15, to what you have as 15?

20         THE COURT:  Yes.  Notice of knowledge, duty

21  of inquiry?

22         MR. EFRON:  No objection.

23         MR. ARIAS-MARXUACH:  No objection, Your

24  Honor.

25         THE COURT:  Okay.  No. 16.  Number of

1    witnesses, that's also very standard.

2          MR. ARIAS-MARXUACH:  No objection.

3          MR. EFRON:  No objection.

4          THE COURT:  Okay.  No. 17, that's also very

5    standard.

6          MR. EFRON:  Yes, Your Honor.

7          MR. ARIAS-MARXUACH:  No objection.

8          THE COURT:  No. 18, that's also very

9    standard; any objection?

10         MR. ARIAS-MARXUACH:  No.

11         MR. EFRON:  No, Your Honor.

12         THE COURT:  Okay.  No. 19, impeachment; any

13    objection?

14         MR. EFRON:  No, Your Honor.

15         MR. ARIAS-MARXUACH:  No, Your Honor.

16         THE COURT:  No. 20 moves --

17         MR. EFRON:  20 is 15.

18         THE COURT:  Okay.  That moves to after 14,

19    that will become 15.  That was okay also.

20         Okay.  No. 21, any objection?  That's also

21    pretty standard.

22         MR. ARIAS-MARXUACH:  No objection.

23         THE COURT:  Mr. Efron, no objection?

24         MR. EFRON:  No, Your Honor.  Sorry.

25         THE COURT:  Okay.  No. 22, also that's

1    pretty standard.

2              MR. EFRON:  No objection.

3              MR. ARIAS-MARXUACH:  No objection.

4              MR. EFRON:  Nor 24.

5              THE COURT:  Twenty-four, no objection.

6              MR. EFRON:  Nor 25.

7              THE COURT:  Any objection to 24 or 25?

8              MR. ARIAS-MARXUACH:  No, not 24 or 25.

9              THE COURT:  Twenty-six?

10             MR. EFRON:  No objection.

11             MR. ARIAS-MARXUACH:  No objection.

12             THE COURT:  Then 27 is a preponderance of

13   the evidence instruction.  That will not be read.

14   What I will do is, let me take this one out, I don't

15   want to read it inadvertently, and I will save it.

16   If we have a verdict of no dolo under clear and

17   convincing evidence, then I will ask the jury

18   afterwards.  And, again, they won't know about this

19   until they've actually deliberated, I've polled the

20   jury.  And then I will go into that jury if necessary

21   as per my order the other day.  So I will not be

22   touching upon that right now.

23             MR. ARIAS-MARXUACH:  Your Honor, we just

24   want to raise an issue, and then we will obviously

25   continue with the discussion of your proposed

1    instructions.

2            We do have some alternate instructions

3    should the Court go ahead and present the case under

4    a preponderance of the evidence standard after the

5    initial determination and deliberation.  We frankly

6    believe that the case should simply be adjudicated

7    under the clear and convincing standard.  But if the

8    Court does go ahead with that, we do have some

9    proposed instruction that we would like to discuss

10   after we finish this exercise.

11           THE COURT:  Okay.  We'll save this for last

12   to the extent necessary.

13           MR. EFRON:  I think it would be a waste of

14   time.  And let's not put the cart before the horse,

15   let's wait until we get there.  And we can

16   certainly --

17           THE COURT:  No, but I would like to discuss

18   the preponderance instruction because let's assume

19   the jury deliberates tomorrow.  By 3:00 p.m. they

20   find dolo, this is speculative, as to the Berganzo

21   estate under clear and convincing, fine, you're all

22   set with that.

23           Let's assume as to the other estates they

24   don't found dolo, at 2 p.m. I don't want to have us

25   to meet for three hours when I have the jury there

1    and I can instruct them in ten minutes, go back to

2    deliberate but I would ask you now to consider

3    whether under a preponderance of the evidence

4    standard your result would be the same.  And of

5    course I would have to instruct the jury the fact

6    that you may not have found dolo under the other

7    standard does not automatically entail, that you will

8    find it on this standard.  You know, something to

9    that effect.

10          MR. EFRON:  You would not say that in the

11   first --

12          THE COURT:  No.  This would be in the --

13   and, you know, the jury is not even going to know

14   during the first deliberations.

15          MR. EFRON:  Hopefully we won't get to the

16   second deliberations.

17          On 28 --

18          THE COURT:  And let me say this, I noted it

19   in my order the other day, I'm doing this for

20   purposes of I want to know if the jury -- because we

21   have the jury here.  I have not heard any reason from

22   Defendants if -- obviously the standard supposedly

23   changed or when the recondite opinion changed.

24          MR. EFRON:  No, Your Honor.

25          THE COURT:  And that's -- your position

1    didn't change.  But let's assume -- there's two

2    issues there:  Whether it's retroactive or not -- and

3    I could be wrong -- and the other issue is whether

4    the standard under Puerto Rico Law would still be

5    clear and convincing.

6          And the reason I need to ask them this

7    question because let's assume the jury finds dolo

8    under preponderance.  That is something then perhaps

9    I will have to certify to the Puerto Rico Supreme

10   Court.  But if I don't direct them on preponderance

11   and, you know -- okay, so Mr. Arias, what do you

12   propose for preponderance?  And this instruction

13   would not be numbered 27, this would be instruction

14   for second deliberation.

15         MR. ARIAS-MARXUACH:  *Bueno*, Your Honor.  You

16   want me to read my proposed instruction of

17   preponderance?

18         THE COURT:  Or if you have it.

19         MR. ARIAS-MARXUACH:  I have it here.

20         MR. EFRON:  You have a copy?

21         THE COURT:  Is that a standard instruction?

22         MR. ARIAS-MARXUACH:  Well, it's our

23   instruction --

24         MR. EFRON:  Adapted.

25         MR. ARIAS-MARXUACH:  -- based on the case

1    law that we don't believe it's controlling, but that

2    was cited by the First Circuit on recondite.

3         I want to make sure the standard is clear

4    and convincing.  We understand that the case should

5    only go to the jury on that standard.  And regardless

6    of how they rule, that should be the only time that

7    the jury deliberates because in a way it's asking

8    them to rule upon the case twice.  The second time,

9    under a preponderance of the evidence standard, is

10   sort of asking the jury to review itself.

11        They might get the impression -- remember,

12   at the end of the day, Your Honor, you are the only

13   adult in the room, you are the only authority figure.

14   And I believe that if they're asked -- once they rule

15   on the clear and convincing standard, however they

16   may, if they're then asked by the Court to rule under

17   the preponderance of the evidence, they're going to

18   get the message from the only adult in the room, the

19   only authority figure in the room, that somehow they

20   got the first verdict wrong, for whomever it fell.

21   And in a way I'm sorry that I haven't had the time to

22   research this more thoroughly.

23        I also feel there may be a seventh amendment

24   issue because in a way you're asking the jury to

25   review itself when jury verdicts are reviewable only

1    upon the grounds of common law.

2            This would not be a case --

3            THE COURT:  Well, in order for that not to

4    happen, I would have to ask the jury at the same time

5    in the same verdict do you find this clear and

6    convincing?  Do you find preponderance?  And that's

7    what I'm trying to do.  The way I've done it is to

8    favor -- it's a ruling in favor of defense.  If you

9    would like me to ask them at the same time --

10           MR. EFRON:  But that's not going to be until

11   the judge -- until the Court signs the judgment

12   there's not going to be any 7th amendment issue

13   because the case is not going to be over.

14           THE COURT:  Okay, but, Mr. Efron, you want

15   preponderance.  The defense does not want

16   preponderance.  I have agreed with the defense.  But

17   I could alternatively ask the jury under either of

18   these two standards do you find dolo.  And they could

19   deliberate at the same time.  I'm not doing that

20   because I think it's an additional safeguard.

21           MR. ARIAS-MARXUACH:  *Bueno*, Your Honor,

22   again, we think that the case should be solely ruled

23   upon the clear and convincing evidence standard.  But

24   if you do go -- and this is the only point I want to

25   make at this time.  If you do go to the second

1   deliberation, I think the jury needs to be advised

2   that you are going to enter judgment based on the

3   first verdict and that this is something that the

4   judge -- the Court has asked to see how they would

5   evaluate the evidence under the other standard.

6          MR. EFRON:  That was not the Court's order.

7   That was not the Court's order.  The Court will enter

8   a judgment based on the what the jury determines.

9          THE COURT:  Clear and convincing.

10          MR. FREESE-SOUFFRONT:  No, no.

11          MR. EFRON:  Clear and convincing or, or, or,

12   if it doesn't get to that standard, then you will

13   certify it to the --

14          THE COURT:  No, I will have a second

15   judgment with -- a second verdict, which would not be

16   the judgment in the case, because I agree with the

17   defendants but I would have be an alternative.

18          MR. EFRON:  There would be no judgment until

19   you get an answer back from the Puerto Rico Supreme

20   Court.

21          THE COURT:  Oh, there would be a judgment

22   but then in a post judgment motion, which I probably

23   would -- you know, that judgment of the Court will

24   be -- and I can reopen the judgment but I keep

25   jurisdiction.

1      MR. EFRON:  I don't see how you can have a

2  judgment for Defendant and then take the judgment for

3  Plaintiff and certify that to the Supreme Court.

4  It's going to be procedurally very awkward.  I think

5  you either hold it in abeyance if that's the

6  situation or you enter it in favor of who -- of

7  Plaintiffs, depending on what was ruled on, and you

8  hold it back as it gets certified.

9      THE COURT:  Okay, but that's something we

10  have to wait to see what happens because --

11      MR. EFRON:  We hope it doesn't get to that.

12      THE COURT:  Okay, but let's leave that

13  proposed package for later.  Let's go to Jury

14  Instruction 28, clear and convincing; any objection?

15      MR. EFRON:  Yes, Your Honor.  As you well

16  know Plaintiffs' position, that is not the standard

17  in Puerto Rico.  It has not been the standard in

18  Puerto Rico since 1970 or '74 or '82, depending which

19  case --

20      THE COURT:  You don't want to repeat the

21  memorandum.

22      MR. EFRON:  -- depending on which case you

23  want to look at.  I don't want to repeat the

24  memorandum, you're absolutely right, but that is not

25  the law in Puerto Rico.  The First Circuit Court of

1    Appeals, whom we all know and love, does not

2    establish the law in Puerto Rico.  The law in Puerto

3    Rico is established by the Puerto Rico Supreme Court.

4          The Puerto Rico Supreme Court cases are very

5    clear as to what the standard is.  This is not the

6    standard.  The fact that last week -- ten days ago --

7    the fact that ten days ago there was a particular

8    case coming down from the First Circuit that

9    clarified that that was not the standard does not

10    mean that the standard changed, with all due respect,

11    Your Honor.  The standard never changed.  The

12    standard was just clarified now by the Portugues case

13    as it has been by other district court opinions,

14    which of course have limited presidential value.

15          But the -- for the record, we know what the

16    Court's opinion is on this or the Court's judgment is

17    on this, we know what the Court's preference is on

18    this.  But just for the record we want to clarify

19    that we object to this instruction because that is

20    not the standard in Puerto Rico.

21         MR. ARIAS-MARXUACH:  Your Honor, you know

22    our position, it was briefed, and we have no issue

23    with Jury Instruction No. 28.

24         THE COURT:  Okay.  And I will note

25    Defendant's objection.  Obviously I believe that for

1    Jury Instruction No. 28 I will have to mention what

2    preponderance is in order to say a preponderance is,

3    you know, could be 51 percent anything higher.  Clear

4    and convincing evidence has to be -- it's not beyond

5    a reasonable doubt, but it's a higher.  So I'm going

6    to have to actually insert the language to what a

7    preponderance, which proves something more likely so

8    than not.  I'm going to have to instruct the jury,

9    and that would be the second paragraph from No. 27.

10           MR. EFRON:  Twenty-eight, Your Honor.

11   Twenty-eight or whatever it turns out to be once the

12   numbers are changed.  Although by now after 20 all

13   the numbers are going to go back to --

14           THE COURT:  Okay.  No. 29?

15           MR. EFRON:  No objection, Your Honor.

16           THE COURT:  Mr. Arias, any objection?

17           MR. ARIAS-MARXUACH:  No objection, Your

18   Honor.

19           THE COURT:  No. 30?

20           MR. EFRON:  No objection.

21           THE COURT:  That's just a civil code.

22           MR. ARIAS-MARXUACH:  I know.  I do have a

23   concern, Your Honor, and maybe this is not

24   necessarily the precise instruction to talk about the

25   issue, but it's my understanding that whether a

1    contract is clear or not is a legal question, not a

2    jury question.

3           THE COURT:  Yeah, but the problem is

4    that's in Puerto Rico courts.  But if you go to the

5    Marshall versus Perez-Arzuaga, those issues such as

6    parsimony.  It's a legal issue, but in federal court

7    it becomes a jury issue.  So here it's a jury issue.

8    That's why I always suggest that state courts, they

9    should always have juries; it wouldn't be an issue.

10          Okay.  No. 31, definition of dolo?  And I

11   would not mention fraud because dolo is not exactly

12   fraud.  Dolo is a unique creature of civil law.

13          MR. EFRON:  Would you translate it as fraud

14   in the inducement or how would you --

15          THE COURT:  I tell the jury it's called

16   dolo.  I'm going to give them the instruction.

17          MR. EFRON:  The actual translation is

18   deceit.

19          THE COURT:  Dolo, that's the one I've seen.

20   Dolo is deceit when you induce someone into a

21   contract, but it's not really fraud because you can

22   have -- okay, so any objection as to Instruction 31?

23          MR. ARIAS-MARXUACH:  I do have a suggestion,

24   Your Honor.

25          THE COURT:  Okay, let me hear first from

1    Mr. Efron.

2            Any objections?

3            MR. EFRON:  No objection until we get to the

4    last two sentences.  The one that starts with "While

5    standard of proof in civil cases..."  -- and of

6    course I don't want to repeat our objection, but

7    that's not -- Plaintiffs' position is that that's not

8    the standard, Your Honor.

9            THE COURT:  Okay, I will note that.

10           Okay, Mr. Arias?

11           MR. ARIAS-MARXUACH:  Your Honor, I believe

12   that adverb "normally" should be inserted after a

13   while.

14           MR. EFRON:  *Donde*?

15           MR. ARIAS-MARXUACH:  In the next to last

16   sentences.  "While standard of proof in civil cases

17   is preponderance," I think it should say while

18   normally the standard of proof in civil cases is

19   preponderance of the evidence, the remainder --

20           THE COURT:  Or while generally the standard

21   of proof.

22           MR. ARIAS-MARXUACH:  Or generally, yes.

23           THE COURT:  Okay, anything else?

24           MR. ARIAS-MARXUACH:  No.

25           THE COURT:  Instruction No. 32, damages only

1    if necessary.

2            MR. EFRON:  No objection.

3            MR. ARIAS-MARXUACH:  I regret to have to go

4    back and --

5            THE COURT:  Okay, go back.

6            MR. ARIAS-MARXUACH:  In 31, that sentence

7    we're just working on, "While generally the standard

8    of proof in civil cases is preponderance of the

9    evidence" -- the next clause, "...the party alleging

10   fraud has the" -- I think the -- higher burden of

11   presenting --

12           MR. EFRON:  No, Your Honor.  No, that was

13   already explained.

14           THE COURT:  And actually, it shouldn't be

15   fraud, it should be dolo.

16           MR. ARIAS-MARXUACH:  Dolo.  The higher

17   burden of presenting evidence which is clear, solid,

18   and convincing.

19           MR. EFRON:  You would be over instructing on

20   that point because you've already instructed it.

21           THE COURT:  Let me just go back to clear and

22   convincing.  Actually, clear and convincing has a

23   greater degree of persuasion.  I'm going to give

24   these instructions to the jury before you argue, so

25   you're free to say "as the judge mentioned" and you

1    can use the instructions to your benefit.  You're

2    going to have them, so you've got more leeway in this

3    courtroom than when judges give the instructions

4    afterwards.

5          Thirty-two, damages only if necessary; any

6    objection?

7          MR. EFRON:  No, Your Honor.

8          MR. ARIAS-MARXUACH:  No.

9          THE COURT:  That's okay.  Then No. 33,

10    damages for dolo; any objection?

11          MR. EFRON:  Yes, Your Honor.

12          THE COURT:  What's the objection?  Oh, you

13    have no objection?

14          MR. EFRON:  I do have an objection.

15          THE COURT:  Okay.  What's the objection?

16          MR. EFRON:  It's more of a clarification

17    because it's a little confused and convoluted.  I

18    know that with your office has pulled this out of

19    other case and has tried to adapt it to this case --

20          THE COURT:  I believe I pulled my original

21    dolo instructions from Judge Cerezo's dolo

22    instructions that she's been using for thirty years.

23          MR. EFRON:  But not all cases are the same.

24    And the -- I would clarify what compensatory damages

25    is on the first line.  You're saying that under

1  Puerto Rico Law you can only award compensatory

2  damages for dolo.

3        THE COURT:  Well, I can say compensatory

4  damages are damages that are meant to

5  put Plaintiff --

6        MR. EFRON:  Compensatory -- you know, I

7  would suggest something to the effect that

8  compensatory are damages for any moral damages such

9  as mental anguish, pain and suffering, you know,

10  whatever the Court's pleasure is.  But certainly

11  clarify that compensatory are moral damages that are

12  separate and apart from setting aside the contract

13  and getting back the money that was taken.

14        THE COURT:  Let me say this because in the

15  instruction, the way it reads, if you find that any

16  Defendant acted with dolo or deceit, said defendant

17  or defendants are liable for all damages that derive

18  from their dolus or deceitful conduct.  You're free

19  to argue -- and the jury -- you know, there's nothing

20  wrong for your arguing -- the judge instructing you

21  on what is compensatory damages.  And I tell you

22  compensatory damages here, you know, they suffered

23  pain and suffering or this and that.  You're free to

24  argue that.  I don't --

25        MR. EFRON:  Okay, Your Honor, that's fair.

1          THE COURT:  Let me hear from Mr. Arias.

2          MR. ARIAS-MARXUACH:  I have the following

3    objections to your Instruction 33.  First of all, I

4    think that because this is a dolo case where there

5    are two different degrees of dolus, there is grave

6    dolus, which is a nullity of the contract in its

7    entirety theory; or incidental dolus, which is short

8    of declaring the contract null and void and in its

9    entirety.  The damages instruction in proposed Jury

10   Instruction No. 33 does not reflect the complexity of

11   the legal theories and their respective outcomes.

12   That's one objection.

13          The second objection is to the dimension of

14   moral or mental anguish that remains in this case

15   because that was not in the pretrial, and the

16   pretrial controls the trial.  That's basic trial law.

17          THE COURT:  Let me get my pretrial order.

18   Let me just run and get it.  Again, it's limited

19   to -- let's look at what was claimed in the pretrial

20   order, whatever damages they may have suffered.

21          MR. ARIAS-MARXUACH:  While your law clerk is

22   getting the Court's copy of the proposed pretrial

23   order --

24          THE COURT:  If you have it there, you can

25   start referring to it if you want.

1          MR. EFRON:  Your Honor, yes.  At Page 7,

2     Plaintiffs' part, of course, at Page 7, in addition,

3     since defendants acted deceitfully in the performance

4     of these obligations damages should be awarded.

5          MR. ARIAS-MARXUACH:  "Damages" is a generic

6     term.  If you are -- and this is in the performance

7     of the obligation, that claim was dismissed by

8     Rule 50.  But, again, the mere invocation of the

9     generic word "damages" cannot be sufficient to

10    preserve for trial a claim for mental anguish or

11    moral damages.  Which, as Your Honor knows, any claim

12    not --

13         THE COURT:  What other dolo damages would we

14    have here?  There would be no other damages.  The

15    only thing there's a --

16         MR. ARIAS-MARXUACH:  Interest.

17         THE COURT:  -- if the jury finds dolo -- but

18    interest is something I would impose myself by --

19         MR. EFRON:  By law, by operation of law.

20         MR. ARIAS-MARXUACH:  It would be interest,

21    it wouldn't be mental anguish.

22         THE COURT:  So according to your position,

23    Mr. Arias, the jury verdict form, which we'll discuss

24    in a few minutes, would only ask if they find dolo.

25    If they find dolo, then it's up to me to impose the

1    equitable remedy.

2         MR. ARIAS-MARXUACH:  *Bueno, no*, because the

3    jury could also find that there was no grave dolus.

4    Of course our contention is that there is no dolus of

5    any nature whatsoever.  But theoretically speaking,

6    the jury could find that there was no grave dolus but

7    that there was incidental dolus as to some of those

8    plaintiffs.  That would require a remedy short of

9    disgorgement of the process of the retainer

10   agreement.  And it could be interest or whatever, but

11   then even as to those plaintiffs Mr. Ambush would be

12   entitled to the reason value of his services.

13        THE COURT:  But do you have an instruction

14   on grave or incidental dolus?

15        MR. ARIAS-MARXUACH:  Yes, we do.  We have a

16   proposed instruction.

17        MR. EFRON:  What will they think of next?

18   Now that was not picked up -- that was not mentioned

19   at all in the pretrial.  That was not mentioned by

20   the Court in the -- in the initial instructions.  Now

21   they come up with this theory that even if they find

22   dolus, he still doesn't have to return the money he

23   stole.  Come on.  How far are we going to take this?

24        MR. ARIAS-MARXUACH:  *Bueno*, first of all, it

25   is mentioned in the pretrial at Page 14.  In order to

1  nullify a contract deceit must be serious and must

2  not have been used by both of the parties.

3  Furthermore, if the deceit is not serious but

4  incidental, the party who employed this is only

5  liable to indemnify for losses and damages.  The

6  intentional fault and bad faith of a person charged

7  must be established inasmuch as good faith is always

8  presumed.  Again, this is Page 14 of Docket 137, the

9  proposed pretrial order.

10         So we did clearly raise in our pretrial that

11  there could be an issue as to incidental dolus

12  instead of grave dolus.  So we did preserve that

13  theory.

14         THE COURT:  Just one second.  Okay, let me

15  see the dolo instruction that you have proposed.  It

16  might be in your jury packet.

17         MR. ARIAS-MARXUACH:  Yes.  We have

18  Defendant's request for Charge No. 7, which are the

19  elements of our cause of action for dolo.

20         MR. EFRON:  Did you copy us for that?

21         MR. ARIAS-MARXUACH:  Yes.  It's Docket --

22         THE COURT:  That's been filed with the

23  Court, yeah.

24         MR. ARIAS-MARXUACH:  It's Docket 170 filed

25  September 12, 2011.

1          MR. EFRON:  I don't have it.

2          THE COURT:  Okay, let's print out that

3     instruction.

4          MR. ARIAS-MARXUACH:  We also have

5     Defendant's request for Charge No. 8, serious versus

6     insubstantial dolus.  And in terms of the damages

7     instruction, we have Defendant's request for Charge

8     No. 16, Defendant's request for Charge No. 17,

9     Defendant's request for Charge No. 18.

10         THE COURT:  Mr. Arias, let's do this, let me

11    take a three-minute recess.  Give those particular

12    ones and we'll make a copy for myself and another

13    copy for Mr. Efron so we can discuss those.

14         MR. ARIAS-MARXUACH:  Should I give those

15    to --

16         THE COURT:  Yeah, to my courtroom deputy.

17    And then we'll copy those and then I will come back

18    out.

19         THE COURT OFFICER:  All rise.

20         (Jury Trial recessed at 2:49 p.m. and

21    resumed at 3:27 p.m.)

22         THE COURT:  Please be seated.  Let me just

23    get my instructions.  Now everybody has a copy of

24    Mr. Ambush's proposed jury instructions.  Mr. Arias,

25    which ones are again for the record that you would

1 like for purposes of the instruction on dolo?

2 MR. ARIAS-MARXUACH: I think we have jury --

3 Defendant's request for Charge No. 16, damages

4 nullity of contract. Defendant's request for Charge

5 No. 17, damages on monetary claims. Defendant's

6 request for Charge No. 18, damages are not to be

7 punitive. Those are the instruction that we are

8 alluding to. There are other additional instructions

9 that we do want the Court to hear, but these were the

10 ones that were germane for the discussions that we

11 were having for the break.

12 MR. EFRON: May we be heard?

13 THE COURT: But the nullity of contract,

14 that's an issue for the Court to determine. Wouldn't

15 that be an issue for the Court to determine if the

16 jury finds dolo?

17 MR. ARIAS-MARXUACH: Your Honor, are you

18 saying that if the Court finds grave dolus it is

19 your -- anyway I think, Your Honor, that the jury

20 should be apprised of what are the consequences of

21 finding a grave dolus. So in that sense it may be

22 for the Court to determine the remedy, but I think --

23 THE COURT: Let me say this, I was under the

24 impression -- let's assume the jury finds dolo, that

25 I have then to issue an equitable remedy, you know,

1    including a recision of the contract for nullifying

2    the contract, if the jury were to find dolo.

3            MR. ARIAS-MARXUACH:  Grave dolo.

4            MR. EFRON:  May I?

5            THE COURT:  Mr. Efron.

6            MR. EFRON:  If we can do it in reverse order

7    because I think it will work better.  If we go to

8    No. 18, you already gave -- you already have your

9    boilerplate perfect.

10           THE COURT:  Damages are no punitive, they're

11   not component.  That's included there.

12           MR. EFRON:  That's already includes, number

13   one.  Number two, the second sentence which they

14   tried to sneak in by saying the relationship to the

15   act complained and of their value.  You don't have --

16   all of the cases they're citing are business cases

17   where there's a specific amount of money that the

18   plaintiff lost.  Over here, when we're talking about

19   moral damages, the value is to be determined by the

20   Ladies and Gentlemen of the Jury.  It's not -- you

21   don't have to show a specific value.  You can't show

22   a specific value when it comes to moral damages just

23   like in tort cases for pain and suffering.  It's not

24   quantitative, it's whatever the jury thinks it's

25   reasonable.  So for that reason --

 1          THE COURT:  And let me ask, would your

 2     position be that whether there's serious dolo or

 3     incidental dolo, would that be an issue for the Court

 4     once the jury finds that there was dolo?

 5          MR. EFRON:  No, Your Honor, no, no, no.

 6     We've always been dealing with dolo as the serious

 7     dolo without calling it serious dolo because it's

 8     dolo.  Everything we have -- throughout this case and

 9     throughout the instructions and throughout

10     everything, no distinction --

11          THE COURT:  I agree with you in that respect

12     because throughout the case I mentioned that I was

13     under the impression that if there's dolo I would --

14     as an equitable remedy --

15          MR. EFRON:  To now at this late stage put an

16     adjective of serious dolo to the term I think not

17     only is confusing to the jury but it's prejudicial.

18          THE COURT:  And it's confusing to the Court.

19          MR. EFRON:  And it's confusing to the Court

20     and to us.  Now, so that and the fact that -- you

21     know, and the title of No. 18 is damages not to be

22     punitive.  Your Honor already has an appropriate

23     instruction for that.

24          Moving back to No. 17, monetary claims --

25          MR. ARIAS-MARXUACH:  Can I be heard on 18?

1          THE COURT:  Let me hear Mr. Efron and then

2    I'll --

3          MR. EFRON:  Let me do all three and then you

4    can...

5          MR. ARIAS-MARXUACH:  Do my thing?

6          MR. EFRON:  Do your thing.

7          You know, there's two sentences in this one

8    as well.  They're making it seem, if you were to read

9    that instruction, you would be telling the jury that

10   my clients are not entitled to get anything back

11   other than interest.  And that's not exclusively what

12   they are entitled to get back.

13         The second sentence is totally false.  It's

14   false because Plaintiffs are not -- when you say that

15   Plaintiffs may only be awarded as damages the payment

16   of legal interest over the sum retained as his fees

17   under said retainer agreement, that's absolutely

18   false.  That's not what a dolo -- that's not what a

19   finding of dolo would -- that's not what a finding of

20   dolo would entail here.

21         THE COURT:  Let me ask Mr. Efron, if the

22   jury -- let me put it this way:  Your theory to me

23   has always been there was dolo all the way --

24         MR. EFRON:  Yes.

25         THE COURT:  -- but not different degrees of

1  dolo.  You're not arguing to the jury if you don't

2  find the really, really bad dolo then find the second

3  type of dolo?

4        MR. EFRON:  At this late stage they can't

5  come and argue to the jury --

6        THE COURT:  No, but you're not arguing.

7  Your argument is that there was the serious dolo --

8        MR. EFRON:  Dolo is dolo.

9        THE COURT:  -- and it nullifies everything

10  and I get whatever damages stem from that.

11        MR. EFRON:  Look, dolo a dolo.  They can't

12  now come and say, well, you know, if it was

13  incidental dolo, we'll admit to incidental dolo but

14  we didn't do the other one.  So we'll admit to

15  incidental dolo but that doesn't rescind the

16  contract.

17        THE COURT:  They're not admitting to any

18  dolo.

19        MR. EFRON:  Huh?

20        THE COURT:  They're not admitting to any

21  dolo.

22        MR. EFRON:  Well, they're not admitting to

23  it, but the way they would argue it they could argue

24  in the alternative.  If you find --

25        MR. FREESE-SOUFFRONT:  I don't think so.

1          MR. EFRON:  Any damage that you find has to

2     be incidental.

3          THE COURT:  I'm inclined to just give a

4     general jury dolo instruction.  But I don't want you

5     then at some point, assuming there's a verdict in

6     your favor of any kind, saying well, Judge, you

7     didn't grant the equitable remedy or you didn't do

8     this now I'm going to incidental dolo and try to, you

9     know.  So you're foreclosing any remedy under

10    incidental dolo?  You're going dolo all the way or no

11    dolo?

12         MR. EFRON:  There should not be a

13    distinction, Your Honor.

14         THE COURT:  All right.  Let me hear from

15    Mr. Arias.

16         MR. EFRON:  I haven't finished.

17         THE COURT:  Oh, you haven't finished.  Okay,

18    last one.

19         MR. EFRON:  The nullity of contract I think

20    the Court already --

21         THE COURT:  That's an issue for the Court,

22    the equitable remedy.

23         MR. EFRON:  Okay.  So go ahead, Mr. Arias.

24         MR. ARIAS-MARXUACH:  *Bueno*, Your Honor, we

25    did not create the distinction between serious dolo

1   and incidental dolo.  That was created by the framers

2   of the]Puerto Rico Civil Code.

3          THE COURT:  Okay, but Mr. Efron is not

4   seeking any remedy for the lower level of dolo; he's

5   going for the serious dolo and he's not going for

6   that other dolo.

7          MR. ARIAS-MARXUACH:  Just a second, Your

8   Honor.  *Bueno*, Your Honor, if he wants to make -- it

9   hurts him.  If he wants to foreclose any claim of

10  incidental dolo, then it's a zero-sum game.

11         MR. EFRON:  We'll take the risk.  Let's just

12  not distinguish or put an adjective of serious on

13  what we're going to prove -- on what we have proven

14  in this case.

15         THE COURT:  Okay, but what I'm saying is, if

16  I give the jury just a general definition of dolo,

17  for purposes whenever I have to issue any equitable

18  remedies, if I have to, it would be --

19         MR. EFRON:  Serious.

20         THE COURT:  -- serious dolo.

21         MR. EFRON:  Yes, Your Honor.

22         THE COURT:  And you're waiving any other

23  claim for any other -- and it's not in your pretrial

24  order so you're not requesting different types of

25  dolo?

1          MR. EFRON:  Yes, Your Honor.

2          THE COURT:  Or you're not -- because I don't

3     want you -- let's assume --

4          MR. EFRON:  No.  I know.  We're clear.

5     We're clear.

6          THE COURT:  I don't want you to argue in the

7     alternative jury --

8          MR. ARIAS-MARXUACH:  *Bueno*, let the record

9     be clear that if there's no serious dolo then he has

10    foreclosed any claim that the jury should have been

11    instructed on incidental dolus.

12         THE COURT:  Okay.  The jury will be

13    instructed on serious dolo and that is it.

14         MR. EFRON:  Let's not put the serious --

15         THE COURT:  No, I'm not going to tell the

16    jury serious dolo, that's dolo.  But --

17         MR. EFRON:  It's dolo.  We have one dolo

18    here.

19         THE COURT:  -- what I don't want is that at

20    some point if the jury does not find dolo, which

21    would be serious dolo, then you cannot say I want a

22    mistrial or a new trial because from the evidence

23    there could have been the other type of dolo.

24         MR. ARIAS-MARXUACH:  But I still think, Your

25    Honor, that -- it's one thing to instruct the jury as

1  to damages under an incidental dolus theory.  But the

2  law creates this distinction, and I have to voice my

3  concern as an officer of the Court, that if the law

4  creates a distinction between serious dolo an

5  incidental dolus, then the jury should know that

6  there is a difference.  It may not be their claim and

7  they may well be instructed to note what Plaintiffs

8  are claiming is that the degree of dolus that they

9  allege to have proven results in the nullity of the

10  contract.

11          But I think that the jury -- for the jury to

12  be properly charged they have to know that there are

13  two different kinds of dolus because otherwise it's

14  going to be a superficial instruction and --

15          THE COURT:  What do you suggest that I say,

16  Ladies and Gentlemen of the Jury, under Puerto Rico

17  Law there's two types of dolo:  Serious dolo or

18  incidental dolo.  In this case the plaintiff is only

19  alleging serious dolo --

20          MR. ARIAS-MARXUACH:  Serious dolus.

21          THE COURT:  -- and I will refer to it as

22  dolo throughout the rest of my instruction?

23          MR. ARIAS-MARXUACH:  Yes, yes, that's what

24  I'm telling you.  They should be advised that there

25  is a distinction created under the law.  It was not

1    created by Mr. Freese, it was not created by

2    Mr. Arias, it was created by the]Puerto Rico Civil

3    Code, and by the interpretive case law of the Puerto

4    Rico Supreme Court.

5          And for the jury to be properly instructed

6    then they should be advised of what is the nature of

7    Plaintiffs' claim.  Their claim is serious dolo.

8    That dolus that is so severe that it results in zero

9    consent, no contract, restitution of the fruits of

10    the contract versus incidental, which is something

11    else that does not result in the contract being void.

12          MR. EFRON:  This would have the same effect,

13    Your Honor, of, again, raising the bar and raising

14    the standard -- it's just like raising the standard

15    of proof which we, of course, objected to.  Now not

16    only the standard of proof enhanced but in addition

17    the tort has also been enhanced.  Now the jury is

18    going to hear, if the Court follows Mr. Arias'

19    suggestion, that I have to prove not just dolo but

20    serious dolo.  And what does that mean?  That's not

21    what the initial instructions were, that's now how

22    this case has been tried all along.  And it would put

23    an additional burden on Plaintiffs' unnecessarily.

24    Everyone's clear on what it is.

25          MR. ARIAS-MARXUACH:  Can I be heard?

1          THE COURT:  One last argument then I'm going

2     to move on.

3          MR. ARIAS-MARXUACH:  *Bueno*, Your Honor, it's

4     not that we created this distinction.  It is what

5     they are claiming.  They are claiming that the degree

6     of dolus in this case was such that the contract is

7     null and void and had no legal effect.  And it is

8     Puerto Rico Law that creates a distinction between

9     the two degrees of dolus.  He has chosen the most

10    radical form of dolus that which results in zero

11    contract.

12         So, therefore, if that's the claim they have

13    made, the jury has to be properly instructed about

14    the contours of that claim.  And --

15         THE COURT:  But I believe in the jury

16    instruction as to damages -- excuse me, as to

17    definition of dolo -- and the last page, it says,

18    moreover in determining whether to permit

19    invalidation of a contract in place of dolo, you must

20    place -- they know that if they find dolo, the ruling

21    is that the Court will invalidate eventually the

22    contract.  They're going to be told that.

23         MR. ARIAS-MARXUACH:  You're in 31?

24         THE COURT:  In Instruction 31 they're going

25    to be told, if you find dolo, deceit, and you make

1  that finding -- and I will tell them when they read

2  the verdict form, when you make that finding it means

3  the contract is null and void.  So they know about

4  that already.

5       MR. ARIAS-MARXUACH:  Your Honor, we're fine

6  with 31 as modified in the previous discussion.

7       MR. EFRON:  I don't think it requires any

8  modification.

9       THE COURT:  Okay, then what the Court will

10  do, 33 remains as-is and I think it's consonant with

11  31.

12       MR. ARIAS-MARXUACH:  I do want to be heard

13  on 18.

14       THE COURT:  Okay, let me finish because I

15  think there's only one other instruction, 34 here,

16  restoration of objects of contract.  And that I

17  should tell them because that's what Mr. Efron is

18  seeking -- that if you find there was dolo, then the

19  result is that the Court will order restitution.

20       MR. ARIAS-MARXUACH:  We have no objection

21  with 34, Your Honor.

22       MR. EFRON:  Yeah, I would clarify it only

23  because I think it falls short when you say if you

24  find the retainer agreements to be null then the

25  defendant must dispatch restitution of the of the

1    amounts of pain to the additional retainer agreement

2    plus interest.  And I would add, in addition to any

3    damages for dolo you the jury may award.

4         MR. ARIAS-MARXUACH:  Again, Your Honor, he's

5    trying to sneak in moral damages and they were not

6    argued in the pretrial.

7         THE COURT:  Okay, that's something I will

8    discuss.

9         MR. ARIAS-MARXUACH:  Can I go ahead and talk

10   about request for Charge No. 18?

11        THE COURT:  Okay, let me find that one.

12        MR. EFRON:  We -- moral damages were argued

13   in the --

14        THE COURT:  Let me go with that.  Hold on

15   one second.  Let me find -- -- let me ask Mr. Efron,

16   do you have any objection to proposed Jury

17   Instruction No. 18?

18        MR. EFRON:  Yes, Your Honor.

19        THE COURT:  What's the objection?  Because

20   this goes to the issue of dolo.  And that is

21   something that's been argued through the cross.

22        MR. EFRON:  Are you talking about their 18?

23        THE COURT:  Yes.

24        MR. EFRON:  As I said before, that's how I

25   started off the argument, you already -- the title of

 1    this proposed instruction is damages not to be

 2    punitive.  You already gave an appropriate

 3    instruction as to that.  The second sentence is not

 4    applicable as to moral damages because it's only

 5    applicable when there's a quantitative value that can

 6    be determined, which is why they make reference to

 7    it.

 8            THE COURT:  No, no.  But I'm referring --

 9    this is from the defendant's proposed jury

10    instruction packet, it's not my instruction.

11            MR. EFRON:  This is not --

12            THE COURT:  No.  It's notice knowledge duty

13    of inquiry.

14            MR. EFRON:  Didn't you just argue this

15    No. 18?

16            MR. ARIAS-MARXUACH:  No, I haven't had the

17    chance to argue, but that 18 is my 18.

18            MR. EFRON:  Okay, so you have a different

19    18.

20            MR. ARIAS-MARXUACH:  We're talking about my

21    proposed 18.

22            THE COURT:  That would be notice knowledge

23    duty of inquiry.

24            MR. ARIAS-MARXUACH:  No, no, no.

25            MR. EFRON:  Which 18 are you talking about?

1          THE COURT:  Okay.  So then --

2          MR. ARIAS-MARXUACH:  No, no, I'm talking

3    about Defendant's request for Charge No. 18.

4          THE CLERK:  Docket 107.

5          MR. EFRON:  What 18 are you on, Judge?

6          THE COURT:  Okay.  For charge -- okay,

7    excuse me.  Damages not to be punitive, that's the

8    one you're referring to?

9          MR. EFRON:  Yes, Your Honor.

10          THE COURT:  You're arguing punitive damages?

11          MR. EFRON:  You already gave an instruction

12    on that.

13          THE COURT:  I believe that was covered by my

14    ruling.

15          MR. EFRON:  Yes, Your Honor.

16          MR. ARIAS-MARXUACH:  Okay, we're going to

17    withdraw that one.

18          THE COURT:  So I believe then we have on my

19    working draft, which by this afternoon will become a

20    final draft, and I'll e-mail this -- actually, I'll

21    file it in E.C.F., this working draft.

22          Any other proposed instructions?

23          MR. ARIAS-MARXUACH:  Yes, sir.  I do have

24    some.  For purposes of the record, Raul Arias on

25    behalf of Defendant Joshua Ambush.

1          Your Honor, we would like the jury to be

2    instructed as per our request for Charge No. 3.

3    Sympathy is not a factor.

4          THE COURT:  Let me see if I have that using

5    the word sympathy because that's obviously --

6    actually, that talks about sympathy.

7          MR. EFRON:  Yes, Your Honor.

8          THE COURT:  Let me look.  That's -- it's the

9    last paragraph, yes.

10          MR. ARIAS-MARXUACH:  That's your No. 2?

11          THE COURT:  No. 2.  And it reads:  You must

12    perform your duties as jurors without bias or

13    prejudice as to any party.  The law does not permit

14    you to be controlled by sympathy, prejudice or public

15    opinion.  All parties expect you will carefully and

16    impartially consider all the evidence.

17          MR. ARIAS-MARXUACH:  Then we're satisfied

18    that that's covered, Your Honor.  We are also

19    requesting that the jury be instructed as per

20    Defendant's proposed Jury Instruction No. 6.

21    That's --

22          MR. EFRON:  I don't have it.

23          MR. ARIAS-MARXUACH:  Well, you should have

24    brought your 170.

25          THE COURT:  Proposed Jury Instruction No. 6,

1    which one is that?

2         MR. ARIAS-MARXUACH:  That is an instruction

3    that covers the definition of what presumptions are

4    and it proposes that the following presumptions are

5    applicable in this case.  And all of these

6    presumptions come from the Puerto Rico Rules of

7    Evidence.

8         THE COURT:  That's a standard instruction I

9    generally give.  I think I have --

10        MR. ARIAS-MARXUACH:  But there are several

11   specific presumptions, Your Honor, that are

12   applicable to this case:  First, that the law has

13   been obeyed.  Second, that private transactions have

14   been fair and regular.  Third, that a person intends

15   the ordinary consequences of his or her voluntary

16   act.  Fourth, that acquiescence followed from a

17   belief that the thing acquiesced in was conformable

18   to the law or fact.  Five, that persons act in good

19   faith.  Six, that contracts are valid and have been

20   consented to.  And seven, that there was good and

21   sufficient consideration for a written contract.

22        Those are all, again, presumptions that come

23   from the Puerto Rico Rules of Evidence, and it's Rule

24   304, 31 --

25        THE COURT:  Let me just take a look because

1    I do have -- I do have that very, very similar

2    instruction.

3            MR. EFRON:  You do, Your Honor.

4            THE COURT:  I don't have.  I can't find

5    my -- let me hear from Mr. Efron because I

6    normally -- I've given a very similar instruction I

7    can't find it among my other instructions.

8            MR. EFRON:  I would suggest that the Court

9    use its usual boilerplate form.  I mean, why just

10   limit it to seven presumptions?  There's 39 in the

11   rule, we should use all of them.  Who determines

12   whether these are the ones that are applicable?

13   Defendants?

14           THE COURT:  That's what I'm looking for the

15   run of the mill one.

16           MR. EFRON:  And your run of the mill would

17   be fine with us.

18           THE COURT:  It's very similar.

19           MR. EFRON:  But it doesn't specify and it

20   doesn't have the effect of adding seven presumptions

21   that will further confuse the jury.

22           MR. ARIAS-MARXUACH:  *Bueno*, Your Honor, the

23   presumptions are there to govern the burden of proof,

24   and it is your job to determine which ones are

25   applicable to this case.  That's why you're here.

1    It's not to present the jury with 39 presumptions

2    willy-nilly some of which have nothing do with this

3    case.  We have identified the seven that deal

4    specifically with the subject matter of this case.

5           MR. EFRON:  In your opinion.

6           MR. ARIAS-MARXUACH:  In my opinion, but I'm

7    here to convince the judge and you are too.  So

8    that's what I'm saying right now.

9           THE COURT:  Okay.  Let me then look at the

10   rule, and tell me the rule you're looking at?

11          MR. ARIAS-MARXUACH:  It's Rule 304 of the

12   Puerto Rico Rules of Evidence because this is an

13   adversity case.

14          THE COURT:  Okay, but the rules of evidence

15   that apply are the federal rules.

16          MR. ARIAS-MARXUACH:  Your Honor, but the

17   rules -- the Federal Rules of Evidence specifically

18   state that when the case is a case in diversity the

19   presumptions that apply are the presumptions

20   recognized --

21          THE COURT:  You have the 29 rules there or a

22   list?  Do you have the rules of Puerto Rico evidence?

23          MR. ARIAS-MARXUACH:  I don't have the Puerto

24   Rico Rules of Evidence with me.  I have my

25   instructions that list the seven that I assumed were

1  applicable to this case.

2       THE COURT:  Those are the Puerto Rico ones.

3       MR. EFRON:  I marked the page because I was

4  expecting this.  There's 39 plus the subsections.

5       THE COURT:  What I will do is, let me read

6  the ones -- I'll go over each of them and say which

7  ones are applicable.

8       MR. EFRON:  The Court already has an

9  appropriate instruction for that.

10      THE COURT:  No, but the thing is, I cannot

11  find the one I have, so I have to go one by one.

12      No. 1, this is Rule of Evidence 304, deals

13  with innocent -- presumption of innocence.  That does

14  not apply here.

15      No. 2, every legal act was committed with

16  illegal intention; that's not applicable here.

17      No. 3, every person intends the ordinary

18  consequences of any act which is voluntary; that's

19  included here, that's No. 3.  That's been included.

20      Every person takes care of his own matters

21  with ordinary -- you know, we'll probably need a

22  translation for these.  Let me see -- -- let me look

23  again.  Let me see if I find the one I use.  It would

24  be easier just to use the one I've used, but I can't

25  find it when I want it.  Just give me one minute.

1    I'm just trying to find it.  I know I have it

2    somewhere.  I've located it.

3          Okay, the general instruction that I read

4    and it's much simpler but I think -- again, if we

5    start -- instructions to the jury have to be simple

6    because they start getting confusing and they effect

7    the plaintiff and they also effect the defendant.

8    And, again, if you're not able, with a simple

9    instruction you can use your arguments and expand on

10   that instruction.

11         Okay.  Presumption of regularity, ordinary

12   course of business, obedience to the law.  You are to

13   consider only the evidence in the case but in your

14   consideration of the evidence you are not limited to

15   the bald statements of the witnesses; in other words,

16   you are not limited to what you see and hear as the

17   witnesses testify.  You are permitted to draw from

18   the facts which you find have been proved such

19   reasonable inferences as seem justified in light of

20   your experience.

21         Inferences are deductions or conclusions

22   which reason and common sense lead the jury to draw

23   from the facts which have been established by the

24   evidence in the case.  Unless -- and this is where

25   the language is.  Unless and until outweighed by

1    evidence in the case to the contrary, you my find

2    that official duty has been regularly performed,

3    private transactions have been fair and regular.

4    That the ordinary course of business or employment

5    has been followed, that things have happened

6    according to the ordinary course of nature and the

7    ordinary habits of life, and that the law has been

8    obeyed.

9         And that's the instruction that I ordinarily

10   give.  I think -- and you're free to argue anything

11   to the jury based on the facts.

12        MR. EFRON:  Can we have a copy, Judge?

13        THE COURT:  If everybody's in agreement I

14   will.

15        MR. ARIAS-MARXUACH:  *Bueno*, Your Honor, I

16   still think that there are several that are

17   applicable to this case that are not there.  One is

18   that acquiescence followed from a belief that the

19   thing acquiesced in was conformable to the law or

20   fact, which is very specific and relevant to a case

21   in which dolo, grave dolo, has been averred.

22        Six, that contracts are valid and have been

23   consented to.  And those are very relevant and

24   germane to the cause of action here.

25        MR. EFRON:  But they are issues of this

case. Those are issues for the jury to determine.

MR. ARIAS-MARXUACH: No, but --

MR. EFRON: These are -- if those were -- you know, why did they acquiesce? Because they were deceived. Why is the contract not valid? Because they were deceived, they were victims of dolo. How can we put those type of general statements in that instruction?

THE COURT: Let me ask this --

MR. ARIAS-MARXUACH: Can I say this?

THE COURT: Because this really goes to the burden of proof.

MR. ARIAS-MARXUACH: *Pero es que* it goes to the burden of proof, and this is the legal starting point. The presumptions are there under the Puerto Rico Rules of Evidence and those are the targets that he has to note down with his evidence and his argument. We, of course, understand that the evidence is insufficient but the presumptions are there to set out the order of the burden of proof. And he starts with these presumptions.

THE COURT: The way the instruction would read, for example, in this case until the plaintiff proves otherwise --

MR. EFRON: That's even worse, Judge.

1          THE COURT:  But these presumptions do exist.

2          MR. ARIAS-MARXUACH:  And they have to be

3     given.  And one that is missing is the persons act in

4     good faith.

5          MR. EFRON:  The one that the Court read,

6     your boilerplate instruction is appropriate.

7          MR. FREESE-SOUFFRONT:  But it's not relevant

8     to the case.

9          MR. EFRON:  They're relevant to all cases.

10          MR. FREESE-SOUFFRONT:  Okay.

11          THE COURT:  Just give me one second.

12          MR. ARIAS-MARXUACH:  Your Honor, again, we

13     have identified seven specific presumptions derived

14     from Puerto Rico Law that are germane to the subject

15     matter of this case.  They are in Rule 340 of the

16     Puerto Rico Rules of Evidence, Subsets 31, 37, 18, 3,

17     25.

18          THE COURT:  Let me just jot something down

19     and then I'll read it to you.  And, again, this is

20     not -- I just want to read this out and I'll see what

21     your reactions are.  I think I would probably add

22     this in to Jury Instruction 26, that's the burden of

23     proof.  And after I read the instruction I have --

24     instruction reads:  Although the burden is on the

25     party who asserts the affirmative of an issue to

1    prove his claim under the appropriate burden of

2    proof -- and I will explain -- this rule does not, of

3    course, require proof to an absolute certainty, since

4    proof to an absolute certainty is seldom possible in

5    any case.

6            And then I will explain -- actually, I

7    should probably read this after the clear and

8    convincing evidence standard, but -- okay, let me

9    strike what I said.

10           This would be Instruction 28:  Clear and

11   convincing evidence is evidence that produces in your

12   mind a firm belief or conviction as to the matter at

13   issue.  Clear and convincing evidence involves a

14   greater degree of persuasion that is necessary to

15   meet the preponderance of the evidence standard.

16           And I will explain what preponderance is.

17           This standard does not require proof to an

18   absolute certainty since proof to an absolute

19   certainty is seldom possible in any case.

20           Then I would add:  Plaintiff in this case

21   alleges dolo and has the burden of proving by clear

22   and convincing evidence.  To said effect, the

23   plaintiff must prove that the contract was entered

24   into with dolo, that Defendant did not enact in good

25   faith and that plaintiffs did not consent to the

1    contract.

2          And I think that would summarize all the

3    presumptions into a simple --

4          MR. ARIAS-MARXUACH:  No, no, Your Honor.  I

5    have to say I respectfully disagree, Your Honor.  I

6    think what it does is, it's watering down the

7    elements of our claim for dolo and mixing it with the

8    presumptions.

9          The elements of a claim for dolo under

10   Puerto Rico law are that the defendant had the intent

11   to defraud, that the defendant made false

12   representations to consummate the fraud, that

13   Plaintiffs relied on the fraudulent acts of

14   Defendants, and that the fraud was consummated -- or

15   the dolo was consummated by virtue of the Defendant's

16   false representations.

17         THE COURT:  But that's been given -- then I

18   have an instruction of dolo, which that's Instruction

19   31.

20         MR. ARIAS-MARXUACH:  But the problem is,

21   what we need and what we're asking the Court to do to

22   comply with the rules of evidence is that the jury be

23   advised of what a presumption is under the law.  And

24   we are also asking that the jury be advised of the

25   seven presumptions that, based on the subject matter

1    of this case, are applicable to the case.

2         THE COURT:  Let me ask Mr. Efron, what other

3    presumptions would you want the Court to read to the

4    jury if I were to ask them --

5         MR. EFRON:  I think your 26 with the burden

6    of proof and the dolo requirements is more than

7    sufficient.  Legal presumptions are not used this

8    way.  Legal presumptions are used in specific areas

9    when there are no issues involved.

10        Everything here is an issue.  It's an issue

11   whether the transaction was fair and regular, that's

12   where the deception comes in, the dolo comes in;

13   whether the ordinary consequence.  What did they

14   expect?  I don't know.  It seems like they were

15   expecting to not be cheated.  What's the -- the

16   acquiescence I don't even find in those rules.  So I

17   don't know where the translation's from.  That

18   persons act in good faith -- of course they're going

19   to determine that anyway.  What all of this does, the

20   contract was consented to, Your Honor covers that in

21   the dolo instruction, and consideration.  Also one of

22   the arguments in the case.

23        So everything that's being presented as a

24   presumption has the effect of, again, raising the bar

25   for the plaintiff to make it more difficult to get

1      through to the jury as to what they did.  And it's

2      not necessary.

3                  THE COURT:  Let me note that Instruction 31

4      reads:  The applicable Puerto Rico contract law

5      regarding -- it's going to read dolo, has a strong

6      underlying presumption in favor of good faith and

7      honesty.

8                  MR. EFRON:  It's covered.

9                  THE COURT:  So that's been covered.

10                 MR. ARIAS-MARXUACH:  But it doesn't cover

11     that private transactions have been fair and regular,

12     that the law has been obeyed.  That acquiescence --

13                 THE COURT:  But that's my more general

14     instruction that I can also read.

15                 MR. ARIAS-MARXUACH:  But, again, Your Honor,

16     the issue is very simple:  Presumptions exist to

17     define the burden of proof, and they start with the

18     burden of proof.  And Puerto Rico Rule 304 puts them

19     or directs that they start with the burden of proof

20     as to these issues.

21                 MR. EFRON:  Actually, the presumption --

22                 MR. ARIAS-MARXUACH:  The presumptions are

23     received as a presumption.  That's why he comes in

24     and presents evidence.  And it is up to the jury to

25     determine whether the presumption was revoted or not,

1  but the jury has to be instructed what the

2  presumptions are.

3           MR. EFRON:  The presumptions are

4  precisely -- have nothing to do with the burden of

5  proof.  The presumptions are to -- when no burden of

6  proof is required.  If you look at the book I lent

7  you, every -- or gave you, in the -- every single one

8  of those presumptions are presumptions that would not

9  require proof because of whatever reasons:  Because a

10  witness didn't show up, because two people died in an

11  accident and it's presumed that the younger one died

12  last.  You know, all of those presumptions are

13  presumptions precisely that don't require proof or

14  any burden of proof.  So it would be very confusing

15  to the jury to include those.

16           You know, I don't know if Your Honor has

17  seen those presumptions presented in that way to

18  affect burden of proof.  I haven't.  And I think it

19  would be -- I think it would be an error to do that.

20           MR. ARIAS-MARXUACH:  Well, Your Honor, our

21  position is simple:  The presumptions are there to

22  determine the burden of proof and who needs to prove

23  what.  They are rebuttable presumptions mandated by

24  Puerto Rico Law, they apply, and the jury should be

25  so instructed.  It is up to you to determine which

1   ones apply.

2          THE COURT:  What I will do is, returning

3   Mr. Efron's book, I'm going to read the instructions

4   that I have.  I think that the Instruction No. 31,

5   the presumption in good faith and honesty, and the

6   other ordinary course of business when I read that it

7   presumes everything has -- you know, it's a

8   presumption.  And the jury are going to be asked to

9   until -- unless and until outweighed by evidence in

10  the case to the contrary so Plaintiff is carrying the

11  burden of proof.

12         I'm adding that.  I note any objections that

13  Mr. Arias may have posed.  Any other instructions?

14         MR. EFRON:  Yes, Your Honor.

15         MR. ARIAS-MARXUACH:  Wait, I haven't

16  finished.

17         THE COURT:  Okay, just give me one second.

18  Okay.  Next?

19         MR. ARIAS-MARXUACH:  *Bueno*, Your Honor,

20  Defendant's request for Charge No. 10 is to the issue

21  that when a contract is clear, the literal terms

22  prevail.  It is our contention that the contracts

23  here at issue are clear and the jury should be

24  instructed as to what clarity means in terms of a

25  contract.  And that is the subject of our request for

1    Charge No. 10.

2         THE COURT:  Okay, but this is not a breach

3    of contract claim anymore.  The issue is the dolo a

4    and if there was dolo regardless of how clear was the

5    contract, there was dolo.  You're free to argue to

6    the jury that the contract was clear notwithstanding

7    based on their particular experience, they should

8    have understood what they were doing.

9         MR. ARIAS-MARXUACH:  But this goes back to

10   our contention, Your Honor, or our position, that

11   since the contract is clear, you cannot come into

12   court and try to rewrite the contract alleging that

13   there was something that was verbally represented and

14   it's not in the contract -- a clear contract written

15   in English and Spanish.

16        So our contention is that if clarity of the

17   contract is a jury issue, then they should be -- or

18   contract interpretation is a jury issue, then the

19   instruction should be given.  Request for Charge

20   No. 10.

21        THE COURT:  But there's no issue as to the

22   contracts.  The contracts are clear.  Again, it's

23   clear what they say.  What the plaintiffs are

24   alleging is that notwithstanding Mr. Ambush engaged

25   in dolo.  So I'm denying that instruction.  Anything

1    else?

2          MR. ARIAS-MARXUACH:  Okay.  Well, I do

3    have -- I'm obviously going to move on, Your Honor.

4    Defendant's -- but my objection is noted.

5          THE COURT:  It's noted.

6          MR. ARIAS-MARXUACH:  Yeah, okay.

7    Defendant's request for Charge No. 11 deals with

8    intent and it defines what intent is.  A person acts

9    with intent to achieve a particular result if the

10    area demonstrates either that the person wants to

11    achieve a particular result or that the person knows

12    that the particular result is a natural and probable

13    result of his conduct.

14          And it goes on to explain what is intent and

15    how it can be determined.  And also that a person --

16    stemming to the effect that if he did not intend the

17    particular result is not conclusive.

18          MR. EFRON:  Read the whole thing because I

19    don't have it and I'm just listening.  So if you

20    could read the whole thing, I'd appreciate it.

21          MR. ARIAS-MARXUACH:  I will gladly read the

22    whole thing.

23          MR. EFRON:  Thank you.

24          MR. ARIAS-MARXUACH:  A person acts with

25    intent to achieve a particular result if the evidence

1  demonstrates either, one, that the person wants to

2  achieve the particular result or, two, that the

3  person knows that the particular result is a natural

4  and probable result of his conduct.  The word intent

5  is used to denote that the actor desires to cause the

6  consequences of his act or that he believes that the

7  consequences are naturally and probably to result

8  from it.

9       Intent, therefore, is not limited to

10 consequences which are desired.  If the actor knows

11 that the consequences are naturally and probably to

12 result from his act and still goes ahead, he is

13 treated by law as if he had in fact desired to

14 produce the result.

15      You may infer a person's intent from

16 surrounding circumstances.  You may consider any

17 statement made or act done or omitted by a party

18 whose intent is in issue.  And all other facts and

19 circumstances that indicate the party's state of

20 mind.  A person's statement to the effect that he did

21 not intend a particular result is not conclusive.

22 Remember, you are the only judge of his credibility

23 or her credibility.  You may consider it reasonable

24 to draw the inference that a person intends the

25 natural and probable consequences of acts knowingly

1  done or knowingly omitted.

2          That's our request for Charge No. 11.

3          THE COURT:  Well, Mr. Efron, I think this

4  instruction works both ways; any of the parties could

5  use it.

6          MR. EFRON:  I sort of agree with you, but I

7  think it's totally unnecessary.  It is so longwinded,

8  it's so typical that even he didn't want to read the

9  whole thing.  He just wanted to sort o fly through it

10  and say this paragraph talks about that.  Your

11  boilerplate instructions cover enough of this matter

12  that we don't really need to make it longer and more

13  boring and more confusion to the jury.  I think this

14  is an unnecessary instruction.

15          THE COURT:  Okay, but nonetheless let me

16  note, Mr. Efron, because dolo requires an intent.  It

17  requires --

18          MR. EFRON:  And your instruction on dolo

19  specifically --

20          THE COURT:  Let me go to my dolo

21  instruction.

22          MR. EFRON:  Number?

23          THE COURT:  Let me note because the thing

24  is, I'm looking at this proposed instruction and it's

25  taken out of the federal case law from other

1    circuits, but it's not based on the civil code of

2    dolo.  I note that dolo, for example -- and there is

3    deceit or dolo when by words or insidious

4    machinations on the part of one of the contracting

5    parties the other is induced to execute a contract

6    which without those insidious machinations it would

7    not have made.

8          That's the definition of dolo.  This is --

9    it goes to intent but dolo -- I think that definition

10   is sufficient for dolo.  So --

11         MR. ARIAS-MARXUACH:  *Bueno, pero,* Your

12   Honor, our request is noted.

13         THE COURT:  Your request is noted.  Okay,

14   anything else?

15         MR. ARIAS-MARXUACH:  Yes.  Our request to

16   Charge No. 2 -- 12, sorry, regarding the duties of

17   public notaries.  Shall I read it?

18         MR. EFRON:  Yes, please.  I don't have it.

19         MR. ARIAS-MARXUACH:  Okay.  Docket 107.  The

20   general rule is that a notary is not responsible for

21   the contents of a document when he only authenticates

22   the signatures on it.  However, the Puerto Rico

23   Supreme Court has carved out two exceptions to this

24   general rule:  First, a notary may not authenticate

25   the signature on a private document which was drafted

1    by the notary himself.  Second, a notary may not

2    authenticate the signature on a private document when

3    the notary knows the contents of the document are

4    illegal or false or has serious reason to suspect

5    that something is amiss.  In the latter case the

6    notary must refuse to authenticate the signatures.

7    And this goes to the issue that there was a notary

8    present and authenticated the signatures that were

9    given --

10          MR. EFRON:  The issue is, I haven't sued the

11   notary.

12          THE COURT:  Okay, but for all we know -- you

13   know, I can tell the jury that what a notary does is

14   authenticate signatures --

15          MR. EFRON:  They know that.

16          THE COURT:  -- and that the notary here,

17   there's no dispute that he did not draft -- that

18   could even be a stipulated fact.

19          MR. EFRON:  He's not a party.

20          THE COURT:  Because I think -- and this

21   could work both ways negatively because it may bring

22   issues or inferences that defense or plaintiffs did

23   not bring.

24          What I propose is, since there was mention

25   of everything being notarized, I can say the notary

1   here is not a party to this action.  Under Puerto

2   Rico Law notaries, what they do is give full faith to

3   signatures and make sure these persons -- the person

4   who is signing is indeed who is signing, and that is

5   what the notary does.  The notary does not --

6           MR. EFRON:  It's not an issue in the case.

7           THE COURT:  No, I know it's not an issue,

8   but since -- I think perhaps I should very briefly

9   explain to the jury what a notary is because all

10   these documents were notarized.

11           MR. ARIAS-MARXUACH:  But it goes a little

12   bit beyond.  It goes to the point that if the notary

13   thought that there was should amiss then he should

14   have refused to sign or authenticate the signatures,

15   and all of them were authenticated.  And that's the

16   point of our request for Charge No. 12.

17           THE COURT:  Let me also say this:  The fact

18   that Mr. Efron did not sue the notary, there was no

19   evidence -- the notary was not brought in by anybody.

20   The notary could have been brought by either party

21   and said there was nothing amiss.  So that in a sense

22   would be injecting inferences or something to the

23   case.

24           So I'm not going to give the instruction

25   as-is.  If you want, I can tell the jury that a

1   notary, the only thing he does is authenticate the

2   signatures and that he does not participate in the

3   drafting of any document he notarizes.

4           MR. EFRON:  So long as you clarify that that

5   is not an issue in this case.

6           MR. ARIAS-MARXUACH:  Your Honor, I think

7   that frankly -- and please don't take this the wrong

8   way, but if you're not going to instruct them as to

9   Charge No. 12, then really the issue that they

10  authenticate signatures, they don't need that

11  explanation.

12          THE COURT:  Okay.  Any objections?

13          MR. ARIAS-MARXUACH:  I'm not withdrawing my

14  objection.

15          MR. EFRON:  I got it.

16          THE COURT:  Anything else?

17          MR. ARIAS-MARXUACH:  Yeah.  We have two

18  more.  Okay?

19          MR. EFRON:  And then I'll have just one.

20          MR. ARIAS-MARXUACH:  Okay.  Request for

21  Charge No. 13, the legal fees permitted by law.

22  Under Puerto Rico Law the maximum fees in a

23  contingency case is 33 percent or 33 and a third

24  percent, and we believe that the jury should be

25  instructed as to that.  There was testimony as to

1    that.

2          THE COURT:  But there was testimony and

3    there's no issue as to that, that wasn't disputed.

4    So you're free to argue to the jury, "you heard the

5    evidence."

6          MR. EFRON:  Not only is there no issue, but

7    that's a misrepresentation of what the law is as to

8    this kind of a claim.  Claims -- terrorist claims

9    like this one are limited to 10 percent attorneys

10   fees by the Department of State.  So to now say it's

11   33 and a third, which it isn't by the way it's

12   33 percent --

13         THE COURT:  Okay, but that was not brought

14   to the jury's attention.

15         MR. EFRON:  That's not an issue.

16         MR. ARIAS-MARXUACH:  It was brought to the

17   attention of the jury --

18         THE COURT:  But Mr. Ambush said --

19         MR. ARIAS-MARXUACH:  -- when Mr. Ambush

20   testified.

21         MR. EFRON:  When you asked him on direct, he

22   was instructed to say that that doesn't convert it

23   into an issue.

24         MR. ARIAS-MARXUACH:  *Bueno*, it is an issue

25   because it shows that his ten percent is well below

1    the maximum cap under Puerto Rico Law.

2           The reference that's he's making to a cap on

3    terrorist claims is for a certain administrative

4    forum; it doesn't apply to this case.

5           THE COURT:  But that was not brought here,

6    that's not evidence.

7           MR. ARIAS-MARXUACH:  And we raised this in

8    our pretrial order, Your Honor.  This is in our

9    pretrial order.

10          THE COURT:  But I am not going to give the

11   instruction, but you're free to argue to the jury

12   based on the evidence.  And that has not been

13   disputed, that was undisputed evidence.  And you can

14   say his fees here were 10 percent and that the *codigo*

15   in Puerto Rico it's, you know, 33 percent, other

16   jurisdictions allow a higher percent.  And you can

17   make the analogy.

18          And, Mr. Efron, of course that the 10

19   percent, that's not evidence so --

20          MR. EFRON:  Actually, the insurance code

21   doesn't allow 33 percent.  The insurance code has

22   something like 20 or 25.  You have to get waivers

23   from your client so you can get the 33 percent,

24   assuming they're adults.  So, I mean, it's not -- I

25   think that's such a confusing topic and it's not an

1    issue.

2          THE COURT:  I think sticking to the

3    evidence, what was testified -- and again -- okay.

4          MR. EFRON:  So what is the instruction going

5    to be?

6          THE COURT:  No, I'm not going to give the

7    instruction, but Mr. Arias was the only one who asked

8    Mr. Ambush and Mr. Ambush talked about how under the

9    Puerto Rico Law they can get -- I believe he said 30

10   percent.

11         MR. EFRON:  No, he said 33 and a third so he

12   was wrong anyway.

13         THE COURT:  Okay.  So -- and that's the

14   general rule.  And what Mr. Arias is saying is that

15   the 10 percent is much lower than that, but Mr. Arias

16   can argue that to the jury.

17         MR. EFRON:  Yeah, but the thing is, he was

18   paid by the 20 percent not by the additional

19   10 percent.

20         MR. ARIAS-MARXUACH:  That's your contention.

21         THE COURT:  That's what you can argue.

22   That's for you to argue, again, based on the

23   evidence.  And make sure tomorrow when you argue to

24   the jury, anything that was not raised in the record

25   like that 10 percent or anything, you cannot touch

1    those things because then there's going to be an

2    objection and your closing's going to be interrupted.

3              Okay.  Anything else, Mr. Arias?

4              MR. ARIAS-MARXUACH:  Yes.  Defendant's

5    request for Charge No. 14 is as to the fact that

6    estates are not persons under Puerto Rico Law.

7              And it reads as follows:  Estates by

8    themselves cannot constitute plaintiffs.  Under

9    Puerto Rico Law a succession by itself does not have

10   the capacity to sue or be sued and has no existence

11   as a juridical person.  Therefore, if a succession

12   intends to sue or is to be sued, the names of the

13   persons composing the same must be expressed

14   individually and in detail.  Moreover, because

15   estates themselves cannot constitute plaintiffs, each

16   heir's rights should be judged individually because

17   each individual may have a different attitude towards

18   the complaint.

19             Although heirship conveys a joint right to

20   the aggregate heritage or *herencia*, I guess, or

21   estate, the law recognizes individual separability of

22   the interest in the community of property.  Each of

23   the part owners of an estate has the absolute

24   ownership of his part and that of the fruits and

25   profits belonging thereto and he may therefore sell,

1    assign or mortgage the same and even substitute

2    another person in the enjoyment thereof or lease such

3    parts, unless personal rights are involved.

4          In this action, the plaintiffs are the

5    individuals that compose both the estates of Angel

6    Berganzo-Colon and Antonio Rodriguez.  Because

7    estates are not plaintiffs, each individual plaintiff

8    in this action must prove all the elements of his or

9    her claims.

10          MR. EFRON:  May I, Your Honor?

11          THE COURT:  Yes, Mr. Efron.

12          MR. EFRON:  The jury is supposed to be the

13    triers of the facts.  I think the judge of the law is

14    Your Honor.  And these are really legal arguments and

15    legal conclusions which, by the way, are irrelevant

16    to this case because each one of the plaintiffs sued

17    on their own behalf as members of an estate, but on

18    their own behalf.

19          THE COURT:  Let me -- when you receive the

20    verdict forms, the verdict form, I think, is going to

21    be in compliance with this proposed instruction as to

22    whether there was dolo, and it's going to go

23    individual by individual.  So I think, you know, this

24    is more confusing to the jury.  I think when I tell

25    them about the verdict form -- and obviously I can

1    tell them the estate is composed of Angel Berganzo

2    and his brother, in the other case it's composed, but

3    each of them, you must make a separate finding as to

4    each of the individual claims.

5              MR. ARIAS-MARXUACH:  As long as it's clear

6    that they have to make an individual finding, we can

7    live with that.

8              THE COURT:  So that's going to be it, the

9    individual findings.

10             Mr. Efron, your proposed jury instructions

11   then I'll take a five-minute break and come back with

12   the verdict forms and discuss the preponderance of

13   the evidence.

14             MR. EFRON:  Before we do, I have a hearing

15   someplace else in this courtroom, can I be excused to

16   go there and you'll --

17             THE COURT:  If you have your last

18   instruction.

19             MR. EFRON:  Excuse me?

20             THE COURT:  You have one proposed

21   instruction.

22             MR. EFRON:  Yes.

23             THE COURT:  Let's do that one and then we'll

24   take the break.

25             MR. EFRON:  It's very simple.  And it's

1  something that we've mentioned here before, something

2  about -- and it's based on Miranda-Soto versus Mena;

3  March 11, 1980; Supreme Court of Puerto Rico

4  decision, which tells us that when determining the

5  existence of dolus, which invalidates a party's

6  assent, a Court should consider the following

7  factors:  A, the party's education; B, his social and

8  economic status; and C, the relations and the type of

9  business in which he is engaged.

10         THE COURT:  That is here in the dolo

11 instruction.

12         MR. EFRON:  Well, partly, partly.  I saw it

13 in your instruction.

14         THE COURT:  The Court placed considerable

15 weight on the education, social background, economic

16 status and business experience of the parties seeking

17 to avoid the contract.

18         MR. EFRON:  What number?

19         THE COURT:  My proposed 31st.  And it's

20 there exactly as --

21         MR. ARIAS-MARXUACH:  It's the second page of

22 31st.

23         THE COURT:  And it's all there.  I think

24 there you have all you need to argue to the jury what

25 you are going to argue.

1          MR. EFRON:  Well, there's a little -- if we

2     could adjust that instruction to reflect what the

3     case law says, rather than business experience of the

4     party, the Supreme Court case says the relations and

5     the type of business in which he is engaged as

6     opposed to business experience of the party.

7          THE COURT:  It would be and the relations --

8          MR. EFRON:  The relations.  Well, you could

9     add on the --

10          THE COURT:  The relations and type of

11     business experience of the party.

12          MR. EFRON:  Yes.  That would be --

13          THE COURT:  Any objection, Mr. Arias?

14          MR. ARIAS-MARXUACH:  No objection.

15          THE COURT:  Okay, I will add that.  These

16     are all the instructions that I have for the clear

17     and convincing evidence.

18          MR. EFRON:  What about the verdict form,

19     Your Honor?

20          THE COURT:  Who do you have to see now,

21     which judge?

22          MR. EFRON:  Magistrate Velez-Rive.

23          THE COURT:  Is that an I.S.E. or something

24     quick?

25          MR. EFRON:  Yeah, yeah.

1            THE COURT:  I've got to fix the verdict

2    forms to reflect all the individual estate members,

3    then we'll come back and discuss the proposed

4    Phase 2, if we get to that phase of instructions.  So

5    when you come back, we'll deal with that.  Let's take

6    a recess.

7            THE COURT OFFICER:  All rise.

8            THE COURT:  Let me say it's 4:25.  Everybody

9    be here at five to five.

10           (Jury Trial recessed at 4:25 p.m. and

11   resumed at 5:21 p.m.)

12           THE COURT:  Please be seated.  Everybody has

13   the verdict form that I proposed to use?

14           MR. EFRON:  Yes, Your Honor.

15           THE COURT:  Let me get my own copy.  Let me

16   first ask, Mr. -- actually, Mr. Efron, any objections

17   to this verdict form?

18           MR. EFRON:  Yes, Your Honor.  First of all,

19   and I know what the Court's position is and I just

20   want to state it and reserve the objection for the

21   record, that we believe that the burden should be per

22   estate representative or per family representative

23   rather than individual, number one.

24           Number two, and this is more semantics than

25   anything else, but I notice that when you make

1  reference to Defendant you call him Mister, and when

2  you make reference to the plaintiffs you don't

3  address them either Mister or Miss.  I would

4  suggest --

5          THE COURT:  That's not problem.

6          MR. EFRON:  I would suggest eliminating

7  Mister and putting either defendant or --

8          THE COURT:  What I will do is, I will put

9  Joshua M. Ambush.

10          MR. EFRON:  That's fine.  That's fine, Your

11  Honor.

12          THE COURT:  And I will note your objection.

13          And let me note that the reason I'm doing --

14  I'm putting the estate of Angel Berganzo-Colon

15  composed of -- and the other estate, but -- and,

16  again, I think this works -- you may not be in

17  agreement, but I think this works to your favor

18  because, again, the jury could find, the one

19  particular estate, that, for example, Efrain was a

20  more intelligent person while Ruben was not and that

21  Ruben -- there was dolo as to Ruben, not as to

22  Efrain.

23          MR. EFRON:  We don't disagree.  We're just

24  going to reserve the objection.

25          THE COURT:  Now, let me ask, Mr. Arias, any

1   objection to the verdict form?

2           MR. ARIAS-MARXUACH:  First a suggest, second

3   an objection.  And it's really truly a matter of, I

4   guess, sentence structure, but I think it is worth

5   making.

6           It currently reads -- the verdict from

7   question one currently reads:  Do you find by clear

8   and convincing evidence that Mr. Ambush employed dolo

9   in order to have the following plaintiffs sign the

10  retainer agreement?  I know that the judge is trying

11  to simplify the elements of a claim for dolo, but I

12  think it would be more faithful to the elements of a

13  claim for dolo if it read in the following fashion.

14          Do you find by clear and convincing evidence

15  that plaintiffs signed the retainer agreement because

16  Joshua M. Ambush employed dolo?  Because remember the

17  elements that appear for dolo are not merely that

18  there were some material, you know,

19  misrepresentations or omitted facts, but it also has

20  to have reliance and that the fraud was consummated

21  because of that reliance -- or the dolo was not

22  consummated, sorry.  So we believe that while the

23  judge is trying to simplify --

24          THE COURT:  I note what you're suggesting.

25  I think it's simpler; it's still the same concept,

1    the same question.  I will do it that way; I think

2    it's even simpler for the jury.

3           MR. ARIAS-MARXUACH:  Okay.  Now regarding

4    question No. 2, which is the amount of purported

5    damages, if any, our objection is as follows:  Your

6    Honor has advised us -- we have been told by

7    plaintiff in the proceedings today that they have no

8    incidental dolo claim, that they're only alleging

9    grave dolo, the dolo that is so severe that nullifies

10   the contract.  For that --

11          MR. EFRON:  We're alleging dolo.

12          MR. ARIAS-MARXUACH:  Well, the law is what

13   the law is.  You might not like it.  It's a dolo that

14   nullifies the contract.

15          THE COURT:  It's a dolo that nullifies the

16   contract.

17          MR. ARIAS-MARXUACH:  Yeah.  It's a dolo that

18   nullifies the contract which our case law calls dolo

19   grave or grave dolus, or severe or serious, whatever

20   the adjective you want to put in.

21          But you have also -- what you have told us

22   is that the remedy in the case of dolo that nullifies

23   the contract is an equitable remedy that is within

24   the Court's discretion to grant -- or that falls upon

25   the Court to grant.

1          THE COURT:  In addition, if it's dolo grave,

2    other damages are --

3          MR. ARIAS-MARXUACH:  No.  The only damage is

4    restitution and interest.  Those are the only damages

5    because you're simply putting the persons in the

6    position that they would have been in had they not

7    executed the contract.  Moreover, the only other

8    potential item of damages in this case that Plaintiff

9    has alluded to and is absent from the proposed

10   pretrial order is moral or mental anguish damages.

11   And, again, these are waived because they were not in

12   the proposed pretrial order.

13         And I think the case is simply about dolo

14   that nullifies the contract.  And if the only remedy

15   is restitution and interest, then question No. 2

16   should not be posed to the jury.

17         And that is our objection, Your Honor.

18         MR. EFRON:  Your Honor, Page 7 of --

19         THE COURT:  Before I listen to Mr. Efron, I

20   agree with Mr. Efron.  I think even though it's quite

21   general at Page 7 and there's been evidence through

22   trial that the plaintiffs said, oh, I feel, you

23   know --

24         MR. EFRON:  Dolido, hurt.

25         THE COURT:  Again, I -- and let me say this,

1    if a jury were to award millions of dollars for

2    those, you know, as for a remitter, I'm telling you

3    right away.  I think the key, if the jury finds

4    dolo -- and, again, these are not persons.  The

5    persons received -- the estates received $7 million.

6    If we pro rata that they still received a lot of

7    money.  They were receiving other moneys, most of

8    them at some point.  So this is not a something that

9    they had to sell their residence and all those

10   damages.  There may be some damages, but I don't

11   think this is going to be a case where those

12   damages -- and, again, depending on how that is

13   answered, I will revisit that issue.

14          MR. ARIAS-MARXUACH:  Well, Your Honor,

15   again --

16          THE COURT:  And again, I don't think,

17   Mr. Efron, you're asking for each individual

18   plaintiffs for millions and millions and millions.

19   There's no punitive here.

20          MR. EFRON:  I'll ask for whatever they're

21   willing to give.

22          MR. ARIAS-MARXUACH:  *Bueno*, Your Honor, the

23   problem is, again, that we understand that in the

24   case of dolo that nullifies the contract, the only

25   remedy is restitution.  The civil code allows for

1    other incidental damages in dolo in the performance,

2    and this is not a dolo in the performance case

3    because we prevailed under Rule 50, which Your Honor

4    granted.

5        Moreover, we will be prejudiced if this jury

6    is allowed to consider moral or mental anguish

7    damages.  Because, again, Your Honor sees it

8    differently, but I don't think Page 7 complies with

9    the First Circuit's standards for preserving a claim.

10        And, number two, the jury -- there is no

11    jury instruction, no one here has asked the jury

12    to -- that the jury be instructed properly as to what

13    moral or mental damages are under Puerto Rico Law.

14        And as Your Honor well knows a passing

15    sorrow, a passing sadness, a blank statement, I felt

16    betrayed, that is not sufficient under Puerto Rico

17    Law.

18        THE COURT:  That is what I'm saying that if

19    I see anything that is totally incredible because

20    I've seen the evidence -- and I would agree, I would

21    not expect -- you know, I think based on the evidence

22    any damages should not be very high.

23        MR. EFRON:  For the record --

24        MR. ARIAS-MARXUACH:  Just let me finish,

25    please.

1          THE COURT:  And by that I don't want to set

2     a monetary amount but, you know --

3          MR. ARIAS-MARXUACH:  But, again, it is our

4     position that -- to recap and just so that our

5     objection is noted.  You have made your ruling.

6     One --

7          THE COURT:  But it doesn't mean that I can

8     vacate that award later.

9          MR. ARIAS-MARXUACH:  Well, it wasn't

10    adequately preserved in the pretrial order and,

11    number two, the jury will need to be instructed what

12    mental anguish damages are under Puerto Rico Law and

13    that a passing sorrow is not sufficient to establish

14    mental anguish damages under Puerto Rico Law; because

15    otherwise this defendant is going to be prejudiced.

16         MR. EFRON:  Just for the record, Your Honor,

17    we know how you ruled already but at Page 7 in part,

18    in addition says, if defendant acted deceitfully in

19    the performance of his obligations, damages should be

20    awarded.  Article 1054 of Puerto Rico Civil Code;

21    Article 1060, Puerto Rico Civil Code.  Those are the

22    moral damages that plaintiffs will be entitled to

23    once the jury finds that dolo existed.

24         MR. ARIAS-MARXUACH:  He proved my point,

25    Your Honor.

1          THE COURT:  Mr. Efron, the only type of

2    compensatory damages you're asking is for those moral

3    damages.

4          MR. EFRON:  Yes, Your Honor.  Yes.

5          MR. ARIAS-MARXUACH:  He proved my point

6    because this passage of Plaintiffs' proposed pretrial

7    order is talking about dolo in the performance and

8    this is not a dolo in the performance case anymore.

9    That was a result in Rule 50.

10          THE COURT:  But, again, I am allowing him to

11    argue that to the jury, it was from the evidence that

12    was presented in the case, and it was not objected.

13    And, again, I may revisit this at a later date,

14    but -- and I note the objection.  But obviously I

15    would have to give an instruction on compensatory

16    damages.

17          MR. EFRON:  Well, so this would be your --

18    with that small change that would be the verdict

19    form, Your Honor.

20          THE COURT:  But that would be another

21    instruction as to -- and I'm looking at it, looking

22    for it.  And let me note before I forget, the jury

23    instructions they've been filed in E.C.F. with all

24    the correction.  The objections are noted.  Counsel

25    are free overnight, if you want to note the

1   objections to those instructions for the record you

2   may do so via motion or after I read the instructions

3   to the jury I will give you an opportunity to object

4   also for the record.

5           MR. EFRON:  I won't be able to do that

6   tonight, Judge.

7           THE COURT:  Okay, but that's -- let me --

8   hold on a second.  Where am I?  I seem to have lost

9   my instructions.  I know there's an instruction for

10   damages for dolo.

11           MR. EFRON:  Yes, it's 33.

12           THE COURT:  But I note what I should add to

13   that -- and I understand Mr. Efron, and I want

14   defense attorneys to be clear, the only type of

15   damages you're going to request would be any damages

16   for mental distress --

17           MR. EFRON:  Moral.

18           THE COURT:  -- suffering or anguish caused

19   by the dolo.

20           MR. EFRON:  Because everything else is by

21   operation of law.

22           THE COURT:  So the instruction, what I would

23   add is, you can award compensatory damages --

24           MR. EFRON:  You already said that.  You

25   already put that in, in 33.

1      THE COURT:  No, I know 33 reads that way and

2  now it's actually not going to be 33 anymore.  This

3  would be instruction 29 now.  Okay, this would be

4  31 -- the new instruction would be 31 because of the

5  way they've been renumbered.

6      Under Puerto Rico law you can only award

7  compensatory damages for dolo or breach of

8  contract -- actually not a breach of contract, for

9  dolo.  I'm not going to mention breach of contract.

10 For dolo.  Punitive damages, that is award of

11 additional damages simply to punish the defendant are

12 not allowed under Puerto Rico Law.  If you find that

13 the defendant acted with dolo or deceit, he is liable

14 for all damages derived from his dolus or deceitful

15 conduct.

16      This is the original instruction.  I would

17 add to that instruction, you can award compensatory

18 damages for emotional pain, suffering, or mental

19 anguish if you find that these were caused or

20 aggravated by the dolo.  In determining the amount of

21 damages that you decide to award, if any, you should

22 be guided by an objective and dispassionate common

23 sense.  You must use your sound discretion in fixing

24 an award of damages drawing on all reasonable

25 inferences from the facts presented at evidence

1    during the trial.  You cannot award compensatory

2    damages based solely on sympathy for plaintiffs

3    speculation or guess work.  On the other hand --

4    okay, and that would be the instruction.

5            MR. ARIAS-MARXUACH:  Your Honor, again,

6    we -- our objection has been noted, but we have an

7    additional objectionable request.  We understand that

8    if the jury is going to consider this final

9    objection, moral or mental anguish damages, they have

10   to be instructed about what that is and what the

11   standard for granting that under Puerto Rico Law is.

12           And again, under Puerto Rico Law -- a mere

13   sorrow or *tristeza pasajera* --

14           THE COURT:  I can tell the jury, under

15   Puerto Rico Law --

16           MR. EFRON:  Let's tell them what it is, not

17   what it isn't.

18           MR. ARIAS-MARXUACH:  You have to tell them

19   both.

20           MR. EFRON:  No, you don't have to tell them

21   both.

22           THE COURT:  No, but the mere sorrow, I do

23   know that's Puerto Rico Law.

24           MR. ARIAS-MARXUACH:  That is Puerto Rico

25   Law.

1      THE COURT:  But you have the language, I can

2  add that.

3      MR. ARIAS-MARXUACH:  *Bueno pues*, we will

4  submit a proposed instruction when we get back to the

5  office brief, because we understood that this was not

6  in play, now it is.  So we'll --

7      MR. EFRON:  How could you understand that's

8  not in play?

9      MR. ARIAS-MARXUACH:  I'm not going to answer

10  your question.

11      THE COURT:  Okay.  What I will do is then

12  file that proposed instruction, have it in by

13  tomorrow morning at 8 a.m.  The jury instructions

14  remain as they are, I will add that instruction

15  defining what moral damages are, and then propose

16  that and we will discuss only that instruction in the

17  morning.  Okay?  That's that matter.

18      The verdict form will be corrected.  Then

19  the other matter is assuming there is a verdict of no

20  liability under the clear and convincing evidence, as

21  I mentioned, then after that I will instruct the jury

22  to go back to deliberate and inform the Court that

23  based on the same evidence, would they find a

24  jury (sic) under the preponderance of the evidence

25  standard?  I have looked -- let me say I think --

1    I've looked at the proposed instructions submitted by

2    Mr. Arias and Mr. Freese.  I think that the

3    instruction that I ought to give them, and it will be

4    very similar to -- because all the other instructions

5    have been given to them.  Preponderance has been

6    defined.

7         I can re-read them that instruction, but I

8    think what I need to tell them is, and I think

9    Instruction No. 1 that is proposed, the alternate

10   instruction -- now I will ask you to consider whether

11   by preponderance of the evidence Plaintiffs have

12   proven that they were deceived into entering into the

13   retainer agreement.

14        The reason why I'm requesting that you now

15   consider these dolo claims under the preponderance of

16   the evidence standard is because of a recent judicial

17   decision that may result in the change of the law.

18        And I think the most important language is,

19   I am not seeking nor should you infer from my request

20   that I'm seeking to guide you or to advise you to

21   find dolo or not to find dolo.  That's a decision

22   they have to do under the other standard.  I think

23   that's what I ought to instruct them.  I think the

24   simpler -- I know the Plaintiff -- I mean Defendant

25   is going to object.

1          MR. EFRON:  So are we.

2          THE COURT:  You don't want an instruction?

3          MR. EFRON:  Not like that.

4          THE COURT:  Well, I'm not saying that I'm

5     going to give actually this entire instruction, but

6     what I -- but I think I do have to tell them that the

7     fact that I am asking them to go back and deliberate

8     under a preponderance standard should in no way be

9     interpreted as the Court suggesting that there was

10    dolo or not dolo.  That's a decision they have to

11    make under that other standard and the Court wants to

12    know what the decision is.

13         MR. EFRON:  But if they already decided --

14    let's assume then that there's no dolo and you're

15    sending them back for another standard, for a

16    different standard, why would you revisit dolo?  I

17    think it's just a matter of telling them -- giving

18    them one instruction on the new standard, on the

19    second standard.  And --

20         THE COURT:  No, I'm not going to tell them

21    again what dolo is, they're going to know.  But the

22    only thing is, you deliberated under a clear and

23    convincing evidence standard, now I am sending you

24    back to deliberate on a preponderance standard and

25    that is the because of new decisions that -- or I

1    don't have to tell them that, but I think I want to

2    know -- and I want you two to tell me, you know...

3            Mr. Arias?  Or Mr. Efron, please?

4            MR. EFRON:  We've always had a problem with

5    saying that the new decision changed something

6    because --

7            THE COURT:  Well, I don't have to tell them

8    that, but I do have to tell them that I want to send

9    them back and for them to review the evidence now

10   under a preponderance of the evidence standard, and

11   to tell me whether under this evidence under a

12   preponderance of the evidence standard they would

13   find dolo or not.  And then I have to give them the

14   caveat that the fact that I'm asking them to do that

15   after their verdict in no way should be interpreted

16   as to -- that I'm requesting a finding of dolo or a

17   finding of not dolo.  It is simply that I need to ask

18   them that.

19           MR. EFRON:  Understood.  We agree.

20           MR. ARIAS-MARXUACH:  *Bueno*, Your Honor, we

21   understand that -- and I agree with you that you need

22   to advise them that you are not guiding them towards

23   a result --

24           THE COURT:  That is the key.  My instruction

25   should not take more than two or three minutes.  I

1    can then remind them, remember, a preponderance of

2    the evidence standard is more likely than not, you've

3    heard -- and let me say this:  If the parties -- if I

4    have to do this, I am prepared to give each side 15,

5    20 minutes if you want to address the matter under

6    the preponderance standard.

7            MR. EFRON:  I don't think -- I think that --

8            THE COURT:  I think we probably covered it.

9            MR. EFRON:  Well, not only that, but I

10   think doing that --

11           THE COURT:  I think the arguments are going

12   to be the same; it's just a standard --

13           MR. EFRON:  It's the same argument, but I

14   think you will agree that having to redo the whole

15   thing and having to -- you know, they heard the

16   evidence, they merely --

17           THE COURT:  So I will give them -- I will

18   tell them I'm sending you back, I'm asking you that,

19   and in no way should it be interpreted as to favor of

20   one party or the other.  I just want you to tell me

21   under the standard and do not think it's because you

22   have to find for Plaintiff or find for the defendant,

23   but you do your same function under the rule of law,

24   and let me read to you the preponderance instruction.

25   I think that's all I should do.  Two minutes.

1      MR. EFRON:  Yes, Your Honor.

2      MR. ARIAS-MARXUACH:  Your Honor, I think

3  consistent with Docket 205 they should also be

4  advised that judgment will be entered based on the

5  first verdict.  That's what Docket 205 says.

6      MR. EFRON:  No, because if you do that --

7      THE COURT:  They've already issued the

8  verdict.  I would tell them, you've already issued

9  your verdict.  But I want you -- and that is your

10  verdict.  But I want you to come back and inform the

11  Court whether under a preponderance of the evidence

12  standard, based on the same facts, you would have,

13  you know --

14      MR. ARIAS-MARXUACH:  As long as it is clear

15  that the first determination was their verdict.

16      THE COURT:  I'm not asking them to put aside

17  their verdict, but I'm asking whether under a

18  different standard of proof would they find dolo, not

19  to put aside that verdict.

20      MR. ARIAS-MARXUACH:  *Por eso*, I think you

21  need to be clear that that is our verdict and that

22  you're asking them to look at it again.

23      THE COURT:  I'll tell them, your verdict

24  stands but I'm asking you to inform me, and I want to

25  have this on the record whether on the

1    preponderance --

2           MR. EFRON:  And then of course they would

3    have to --

4           THE COURT:  And it's the same form, it would

5    be the same form but under a preponderance.

6           MR. EFRON:  And they would be able to award

7    damages in that case.

8           THE COURT:  It would be the same exercise

9    under a preponderance of the evidence.

10          MR. EFRON:  Okay.

11          THE COURT:  Okay, let me just write this

12   down.

13          MR. ARIAS-MARXUACH:  Well, Your Honor, one

14   last issue, one last issue.

15          MR. EFRON:  You promise it's the last one?

16          MR. ARIAS-MARXUACH:  I promise it's the last

17   one.

18          THE COURT:  Before the next one.

19          MR. ARIAS-MARXUACH:  Your Honor, it's like

20   when lawyers say lawyer promises, let me ask you a

21   few questions --

22          THE COURT:  Mr. Arias?

23          MR. ARIAS-MARXUACH:  -- it's never a few.

24          Your Honor, while we have this fundamental

25   difference with Plaintiffs' counsel as to what is the

1    proper burden of proof, we took it upon ourselves to

2    submit an instruction under what preponderance of the

3    evidence means in a dolo case.  And for that we

4    relied upon the De Jesus Diaz v. Carrero case, 12

5    Puerto Rico, official translation 786, which is one

6    of the cases cited in the first First Circuit's

7    decision in Portugues.  Now --

8            THE COURT:  That's a drug case.

9            MR. FREESE-SOUFFRONT:  No, Your Honor.  It's

10   not a --

11           MR. ARIAS-MARXUACH:  While we understand

12   that it should be -- that the language says that it

13   has to be proven with reasonable certainty, with

14   preponderance of the evidence that satisfies the

15   conscience, that that verbiage should be given.

16           THE COURT:  I'm going to give -- I note that

17   request, I'm going to give the preponderance standard

18   I gave before.  The jury knows what dolo is and it's

19   just a standard, so I think --

20           MR. EFRON:  Yes, Your Honor.

21           THE COURT:  Again, let me say this:  I think

22   the jurors here are smarter than all of us.  This is

23   not a theory.  I must have tried in the last five

24   years -- or the last ten years, probably maybe 30,

25   40 cases probably even more, and I think the juries

1    have really always considered the evidence, they've

2    paid close attention and they're always free to ask

3    any questions they have.  So I think the less I

4    confuse them, the better for the plaintiffs and for

5    the defense.  So that's my ruling and if you object,

6    I will note the objection.

7           Then you're excused, file that, and I will

8    see you tomorrow.  The jury will be here by nine.  We

9    have to remind the jury.  And then the other

10   instruction is, when do you your closing arguments

11   you may use the exhibits, everything into evidence.

12   It is very important that you always say the evidence

13   here is in the openings shows, demonstrate this, make

14   reference to the evidence.  If you're drawing a

15   reasonable inference do not say the evidence shows

16   that, say you as members of the jury can reasonably

17   infer this or that, if that is what you're doing.

18          And I have no set time limit.  I think

19   probably the closing should take about an hour, no

20   more than an hour and a half.  If you take longer I'm

21   not going to pause you or make you stop, but if I see

22   you're being repetitive -- but again, feel free to

23   move around the well of the Court, as long as it's

24   within all the decorum, court practice, I have no

25   problem.

1          And also if at any point there is any

2     objection, what I would ask is that counsel who is

3     objecting just stand up, I will note it, and then I

4     will call you up for a side bar.

5          Okay, anything further?

6          MR. EFRON:  No, Your Honor.

7          THE COURT:  Then I just want to note for the

8     record also that I want to thank counsel on both

9     sides.  The case has -- even though we took this

10    week-long break, the case has proceeded diligently.

11    You both worked, both for McConnell Valdes and

12    Mr. Efron and with your co-counsel, all of you very

13    diligently.  I think you've done everything that

14    could be done for your respective clients, that is

15    the nature of the judicial process; but I want

16    everybody to know that.

17         I know your clients are not here, I know

18    Mr. Ambush is here, but I don't think there's

19    anything that your attorneys have failed to do.  As a

20    matter of fact, they've done everything that

21    zealously they're required to do; and I think the

22    same thing for Mr. Efron.  And it's really a matter

23    for the jury to decide at the end.

24         MR. EFRON:  Thank you, Your Honor.

25         THE COURT:  Okay, so you're excused and then

1    I will call the settlement pretrial conference in

2    five minutes.

3                (Jury Trial adjourned at 5:46 p.m.)

4                           ---

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EVILYS E. BRATHWAITE, RPR
COURT REPORTER FOR THE U.S. DISTRICT COURT OF PUERTO RICO
(787)772-3377

1    UNITED STATES DISTRICT COURT    )

2                OF                   )ss.

3        PUERTO RICO                  )

4

5

6

7                        CERTIFICATE

8

9

10          I, EVILYS E. BRATHWAITE, hereby certify that

11    the proceedings and evidence are contained fully and

12    accurately, to the best of my ability, in the notes

13    recorded stenographically by me, at the jury trial in

14    the above matter; and that the foregoing is a true

15    and accurate transcript of the same.

16

17                        _____/s/ Evilys E. Brathwaite____

18                        EVILYS E. BRATHWAITE, RPR
                          Official Court Reporter
19                        United States District Court
                          Federal Building, Room 200
20                        San Juan, Puerto Rico 00918
                          787-772-3377
21

22

23

24

25